ARED CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49978.   Promulgated June 29, 1934.

*Robert N. Miller, Esq., George M. Wolcott, Esq.,* and *Melvin D. Wilson, Esq.,* for the petitioner.

*M. B. Leming, Esq.,* for the respondent.

#### OPINION.

MARQUETTE: The respondent has determined a deficiency in income tax for the year 1927 in the amount of $18,271.21. Several errors are assigned which, in the last analysis, resolve themselves into but one question, viz., What basis is petitioner entitled to use in determining the gain or loss upon the sale of certain stocks in 1927?

The facts were stipulated and the stipulation is made a part hereof.

It appears from the stipulation that petitioner is a dissolved corporation. It was organized on September 27, 1927, under the laws of Delaware, and dissolved on or about September 1, 1930.

A. E. Peat on and prior to September 12, 1927, was an officer of the Southern California Gas Co. and Midway Gas Co., and on that date had knowledge of negotiations pending whereby certain

New York banks, acting for others, were planning to purchase all the common stock of the Southern California Gas Co. and Midway Gas Co. at prices which would net approximately the amounts shown below as the value of these stocks on October 8, 1927.

The Norwalk Corporation was organized under the laws of the State of Nevada on September 12, 1927. On that date there were transferred to it by A. E. Peat, for 1,000 shares of its capital stock, the following assets:

988 shares Southern California Gas Co. common stock having a par value of $25 per share, a cost to the transferor of $24,392, and a fair market value on September 12, 1927, of $129,675.

167 shares of Midway Gas Co. common stock having a par value of $100 per share, a cost to the transferor of $56,765.70, and a fair market value on September 12, 1927, of $86,665.

1,700 shares of Studebaker Corporation no par value common stock having a fair market value on September 12, 1927, of $104,550. Norwalk Corporation assumed liabilities of A. E. Peat to the amount of $175,617.50.

All shares of stock which were assigned by A. E. Peat to the Norwalk Corporation for the 1,000 shares of its stock were acquired by A. E. Peat prior to July 29, 1927, and he had the full interest therein and control thereof.

The stock of the Norwalk Corporation was, on October 8, 1927, owned and controlled as follows:

998 shares of common no par stock by A. E. Peat
1 share of common no par stock standing in the name of E. M. Peat
1 share of common no par stock standing in the name of L. M. Copple

The two shares of Norwalk Corporation stock issued in the names of E. M. Peat and L. M. Copple were endorsed back to A. E. Peat on September 12, 1927.

On September 27, 1927, petitioner issued 10 shares of its common stock as follows:

A. E. Peat_____ 8 shares
E. M. Peat_____ 1 share
L. M. Copple_____ 1 share

A. E. Peat and E. M. Peat are husband and wife, and L. M. Copple is their daughter.

E. M. Peat took by assignment the original incorporator's subscriptions for the 10 qualifying directors' shares. She never paid for those shares, but upon the dissolution of the company the amount of the subscription was deducted from the distributive share of the assets.

On October 8, 1927, petitioner issued 350 shares of common stock and 150 shares of voting preferred stock to E. M. Peat, in consideration for the transfer to petitioner of securities having a fair market value of $122,000. Petitioner assumed an indebtedness of $73,144

against these securities. These 500 shares of petitioner's stock, upon their receipt, became and thereafter remained the sole and separate property of E. M. Peat.

Thereafter, on October 8, 1927, petitioner issued 1,000 shares of common stock and 350 shares of voting preferred stock to the Norwalk Corporation in consideration for the transfer by the Norwalk Corporation to petitioner of securities and cash having a fair market value on that date of $320,890. Petitioner assumed liabilities against these securities of $176,617.50. The values and bases to the transferor of the securities received, were as follows:

| Asset | Value 10-8-27 | Basis to transferor |
|---|---|---|
| 988 shares Southern California Gas Co. common stock | $134,400 | $24,392.00 |
| 167 shares Midway Gas Co. common stock | 86,665 | 56,765.70 |
| 1,700 shares Studebaker Corporation common stock | 98,550 | (1) |
| Cash | 1,275 | 1,275.00 |

1 Not sold and not material.

The total number of shares of stock of petitioner outstanding after the transaction described in this paragraph was 1,860.

The value of the stock issued by petitioner for the assets last above mentioned was $144,272.50. The preferred stock of petitioner had a par value of $100 per share; the common stock was without par value. Both classes of stock had equal voting rights.

Thereafter, in 1927, petitioners sold a portion of the securities as follows: 996 shares of Southern California Gas Co. common stock for $133,301.35; 167 shares of Midway Gas Co. common stock for $87,767.94. Petitioner reported a profit of $4.29.

It was determined in the deficiency notice that the sale of stocks referred to above resulted in a profit of $139,911.59, and it is agreed that, if petitioner is limited to the basis of the stock in the hands of the Norwalk Corporation, petitioner is taxable upon said sum of $139,911.59.

It is claimed by the respondent that no taxable gain was realized by A. E. Peat on the transfer by him of the Southern California Gas Co. and Midway Gas Co. stocks to the Norwalk Corporation, and that neither the Norwalk Corporation nor E. M. Peat (wife of A. E. Peat) derived any taxable gain on the transfers by them to the petitioner under section 203 (b) (4) of the Revenue Act of 1926. The basis of the property here in question in the hands of the Norwalk Corporation was the same as it was in the hands of A. E. Peat, because after the exchange A. E. Peat was in control of the Norwalk Corporation. Secs. 204 (a) (8) and 203 (i). *Osburn California Corp.* v. *Welch*, 39 Fed. (2d) 41; certiorari denied, 282 U.S. 850;

*Perthur Holding Corp.*, 23 B.T.A. 1129; affd., 61 Fed. (2d) 785; certiorari denied, 288 U.S. 616; *T. W. Phillips, Jr., Inc.*, 23 B.T.A., 1272; affd., 63 Fed. (2d) 101. The respondent insists, however, that the basis of the property in the hands of the petitioner is the same as it was in the hands of the Norwalk Corporation, and he relies upon section 204 (a) (8) of the Revenue Act of 1926. That subsection provides as follows:

If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subsection (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Subsection (4) of section 203 (b) provides:

No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

" Control " is defined in section 203 (i) as follows:

As used in this section the term " control " means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

From the stipulated facts it appears that on October 8, 1927, the petitioner issued to E. M. Peat 350 shares of common stock and 150 shares of voting preferred stock in exchange for net assets of $48,856, and thereafter, on the same date, issued 1,000 shares of common stock and 350 shares of voting preferred stock to the Norwalk Corporation in exchange for net assets of $144,272.50. The total number of shares of stock of petitioner outstanding after these transfers was 1,860, including 10 directors' qualifying shares which E. M. Peat took by assignment from the original incorporators. Both classes of stock issued by petitioner had equal voting rights.

It is claimed by petitioner that since the property sold was acquired from the Norwalk Corporation in a separate transaction and after the exchange the Norwalk Corporation was not in control of petitioner, the petitioner is entitled to use a new basis in determining gain or loss upon the disposition of the property. The percentage of stock of the petitioner acquired by the Norwalk Corporation

through the exchange was 74.7029 and the percentage acquired by E. M. Peat through the exchange by her was 25.2971. The petitioner issued 1,850 shares in exchange for the properties in the proportion of 1,350 shares to the Norwalk Corporation and 500 shares to E. M. Peat, and the respective percentages were 72.9730 and 27.0270.

The basis provided by section 204 (a) (8), where property is acquired through the issuance of stock in connection with a transaction described in paragraph (4) of subsection (b) of section 203, including also cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock and securities, is the same as it would be in the hands of the transferors; and section 203 (b) (4) provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock and immediately after the exchange such person or persons are in control of the corporation. The statute further provides that in an exchange by two or more persons it shall apply only if the amount of stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Section 203 (i) defines " control " to mean the ownership of at least 80 percent of the voting stock and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

In the recent case of *American Compress & Warehouse Co.* v. *Bender*, 70 Fed. (2d) 655, the court decided practically this same question. In that case the taxpayer was organized with a capital stock of 5,000 shares. It issued 2,280 of such shares to the Louisiana Co. in exchange for property having an appraised value of $228,000, and it also issued 2,720 of such shares to the Shreveport Co. in exchange for property having an appraised value of $272,000. In holding that under section 204 (a) (8) and section 203 (b) (4) of the Revenue Act of 1924 (which sections are identical with the same numbered sections in the 1926 Act) the taxpayer was required to use the same basis for depreciation as was used by the two transferor corporations, the court said in part:

It was contended in argument for the appellant that the transaction in question is different from the one provided for by the statute (Sec. 203 (b) (4)) by reason of the circumstance that the transferred property was not owned jointly or in common by the transferor corporations, each of which transferred to appellant property owned solely by it. The language of the just referred to provision indicates that the framers of it had in mind what frequently occurs in bringing a corporation into existence. It is by no means an unusual occurrence for a corporation to be a result of several separate owners of different properties associating themselves for the purpose of bringing about the creation of a corporation by severally subscribing for stock in the pro-

posed corporation, each subscriber for stock agreeing to pay therefor by transferring to the corporation property solely owned by him at a valuation equal to the amount of stock subscribed for by him. To say the least, the language of the provision is consistent with the existence of an intention to make it applicable whether the property transferred by two or more persons to a corporation solely in exchange for stock of such corporation was owned jointly or in common by the transferors or consisted of separate parcels or groups of properties separately and solely owned by the several transferors, respectively. We think the contention under consideration is not sustainable.

The statute deals with a transaction whereby the relation of one or more persons to property is so changed that, upon their ceasing to be owners of that property they come into control of a corporation upon the latter becoming the owner of that property by the former owners thereof transferring it to that corporation solely in exchange for stocks of that corporation. The statute evidences a recognition that the transaction therein described effects a change in form, but not in substance, of the beneficial interests of the transferors in the transferred property. The transaction described in the statute lacks a distinguishing characteristic of a sale, in that, instead of the transaction having the effect of terminating or extinguishing the beneficial interests of the transferors in the transferred property, after the consummation of the transaction the transferors continue to be beneficially interested in the transferred property and have dominion over it by virtue of their control of the new corporate owner of it. Statutory consequences of the recognized continued existence of the beneficial interests of the transferors in the transferred property immediately after the exchange of it for corporate stock is consummated are that the transaction does not make the parties to it liable for profits taxes, and does not give rise to a new basis for computing the deduction allowable to the transferee corporation for depletion or depreciation of the transferred property. *Cortland Specialty Co.* v. *Commissioner of Internal Revenue,* 60 Fed. (2d) 937; *Pinellas Ice & Cold Storage Co.* v. *Commissioner of Internal Revenue,* 57 Fed. (2d) 188. To attribute to the exchange now in question of property solely for corporate stock the effect of causing gain or loss to a party to that exchange, or of justifying the adoption of a new basis for computing depletion or depreciation of the transferred property, would involve an obvious disregard of substance and reality, as, immediately after the exchange was effected, the beneficial interests of the transferors in the transferred property remained in existence and unimpaired, being substantially the same as they were before the exchange occurred, no third person then having acquired any beneficial interest in property which was a subject of the transfer. It is apparent that property owners do not gain or lose by transferring their properties solely in exchange for all the capital stock of a corporation brought into existence to take over that property where such stock is apportioned between the transferors in accordance with their respective beneficial interests in the transferred property.

\*     \*     \*     \*     \*     \*     \*

Under the clear language of the statute the allowance to appellant for depletion or depreciation is governed by the same bases and rates as would have been applicable if the Louisiana and Shreveport Companies had not transferred their properties to the appellant solely in exchange for the latter's stock. It appearing from the record that the appellant underpaid its taxes for the years in question, the ruling that appellant was not entitled to recover anything was not erroneous.

While the facts in the above case appear to bring it squarely within the provisions of section 204 (a) (7) rather than 204 (a) (8), the discussion by the court of the latter provision of the statute is illuminating and we adopt that construction as effectuating the intention of Congress. We therefore hold that the case is not taken out of section 203 (b) (4) because of the fact that the property sold had been the separately owned property of the Norwalk Corporation and exchanged in a separate transaction.

Finally, was the amount of stock received by E. M. Peat and the Norwalk Corporation substantially in proportion to their respective interests in the properties prior to the exchange? We append below a table showing the respective percentages of stock and assets exchanged.[1] It will be seen from this table that the value of the stock received by the Norwalk Corporation was approximately 1.73 percent *less* than its interest in the property prior to the exchange, and that the value of the stock received by E. M. Peat was the same percentage *more* than her interest in the property exchanged by her prior to that exchange. The statute requires that the stock received by each shall be substantially in proportion to the respective interests in the property prior to the exchange. This, of course, does not require that the proportionate interests shall be exact, but leaves the question of what is substantially proportionate to be decided in each case. We are of opinion, that in the present case a deviation of only 1.73 percent in each exchange is not too much of a deviation from an exact proportion to require a holding that the amounts of stock received were not substantially in proportion to the respective interests prior to the transfer, and we so hold. Since the amount of stock acquired by E. M. Peat and the Norwalk Corporation was in excess of 80 percent of all the stock of the petitioner, they were in control of the petitioner under the provisions of section 203 (i) of the act. The exchanges, therefore, are within the provisions of section 203 (b) (4) of the Revenue Act of 1926, and under section 204 (a) (8) of that act the basis of the property in the hands of petitioner is the same as it was in the hands of the transferors.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

[1] See the following table:

|  | Value of property | Percentage of total | Shares issued | Percentage of total |
|---|---|---|---|---|
| Norwalk Corporation | $144,272.50 | 74.7029 | 1,350 | 72.9730 |
| E. M. Peat | 48,856.00 | 25.2971 | 500 | 27.0270 |
| Total | 193,128.50 | 100. | 1,850 | 100. |