ROYAL MARCHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

QUILL, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67800, 67808. Promulgated February 19, 1935.

*Louis Salant*, *Esq.*, and *Louis F. Gosswein*, *C. P. A.*, for the petitioners.

*Harold Allen*, *Esq.*, and *S. L. Young*, *Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $35,-204.27 in the income tax of Royal Marcher for the calendar year 1929. Royal Marcher assigns as error the recognition for tax purposes by the Commissioner of a gain of $168,332.50 from the receipt by him of 750 shares of the stock of Quill, Inc. The Commissioner conceded at the hearing that he erred in failing to tax this gain as a capital net gain.

The Commissioner determined a deficiency of $18,403.72 in the income tax of Quill, Inc., for the fiscal year ended May 31, 1930. There is but one issue involved as to Quill, Inc.—whether the basis for gain or loss to Quill, Inc., on 150 shares of the stock of Cohn & Rosenberger, Inc., is the basis which the stock had in the hands of Marcher and Grandee, Inc., as determined by the Commissioner, or whether the basis is cost to Quill, Inc., as the latter contends. The facts were stipulated in each proceeding and may be summarized as follows:

Royal Marcher, an individual residing in the city of New York, was the owner in June 1929 of 150 shares of Cohn & Rosenberger, Inc., stock which he had acquired in 1910. The value of this stock on March 1, 1913, was $3,800, which was greater than its cost. The value of this stock on June 15, 1929, was $171,747.75. Marcher desired to dispose of the stock and, at the same time, to avoid the imposition of income tax which would result from a direct sale of the stock to the prospective purchaser. He incorporated two corporations under the laws of New Jersey on June 13, 1929. One of these, named Quill, Inc., had authorized capital of 1,000 shares of no par value. The other, named Grandee, Inc., had authorized capital of 100 shares of no par value. On June 13, 1929, he transferred his Cohn & Rosenberger, Inc., stock to Grandee, Inc., in exchange for all of its capital stock and had his wife transfer to Quill, Inc., some stock belonging to her (not Cohn & Rosenberger, Inc., stock), having a value at that time of $57,249.25, in exchange for 250 shares of Quill, Inc., stock. Two days later, on June 15, 1929, he had Grandee, Inc., transfer the Cohn & Rosenberger, Inc., stock to Quill, Inc., in exchange for 750 shares of Quill, Inc., stock, which latter shares were issued directly to Marcher. Grandee, Inc., thereafter had no assets, but was not dissolved. Marcher did not surrender his Grandee, Inc., stock. Grandee, Inc., never had books

of account and has never had another transaction. Quill, Inc., sold the Cohn & Rosenberger, Inc., stock on June 24, 1929, for $172,260. Thereafter Quill, Inc., engaged in the business of investing in and selling securities. Marcher owed Quill, Inc., $57,128.53 at the close of its fiscal year May 31, 1930. The Commissioner determined that Marcher realized a taxable profit of $168,332.50 when he received the 750 shares of Quill, Inc., stock and that Quill, Inc., realized a taxable profit on the sale of the Cohn & Rosenberger, Inc., stock of the difference between $3,800 and $172,260, the amount realized from the sale.

Marcher admits that all of these steps were part of one purpose— to avoid or at least reduce taxes upon the disposition of his Cohn & Rosenberger, Inc., stock. But he claims that his plan was patterned after the statute and accomplished his purpose. His transfer of Cohn & Rosenberger, Inc., stock to Grandee, Inc., in exchange for all of its stock left him in complete control of that corporation so that no gain was recognized from that transaction. Sec. 112 (b) (5) Revenue Act of 1928. He argues that the transfer of the Cohn & Rosenberger, Inc., stock by Grandee, Inc., to Quill, Inc., was a reorganization within the meaning of section 112 (i) (1) (A);[1] the distribution of the Quill, Inc., stock to him was in complete liquidation of Grandee, Inc.; and no gain to him is recognized since both corporations were parties to a reorganization and he, as a shareholder in one, received stock of another pursuant to the plan of reorganization, without surrender of his Grandee, Inc., shares. See secs. 115 (c) and 112 (g).

Although a transaction otherwise within the nonrecognition provisions of the taxing statute does not result in taxable gain merely because it results in an avoidance of tax (*United States* v. *Isham*, 17 Wall. 496, 506; *Bullen* v. *Wisconsin*, 240 U. S. 625), nevertheless to accomplish its purpose the transaction must be the kind of a transaction that Congress intended to relieve of tax. The Circuit Court of Appeals for the Second Circuit, in deciding the case of *Commissioner* v. *Gregory*, 69 Fed. (2d) 809, said, "it does not follow that Congress meant to cover such a transaction, not even though the facts answer the dictionary definitions of each term used in the statutory definition." It further said:

* * * But the underlying presupposition is plain that the readjustment shall be undertaken for reasons germane to the conduct of the venture in hand, not as an ephemeral incident egregious to its prosecution. To dodge the shareholders' taxes is not one of the transactions contemplated as corporate " reorganizations ".

---

[1] Sec. 112 (i) (1). The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all of the properties of another corporation) * * *.

\* \* \* All these steps were real, and their only defect was that they were not what the statute means by a " reorganization " because the transactions were no part of the conduct of the business of either or both companies; so viewed they were a sham, though all the proceedings had their usual effect.

The Supreme Court of the United States, in affirming the decision of the Circuit Court in the *Gregory* case, said that the words " in pursuance of a plan of reorganization " mean in pursuance of a plan of reorganization of the corporate business and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either. It further said, " The reasoning of the court below in justification of a negative answer leaves little to be said." It held that the transaction there in question upon its face lay outside the plain intent of the statute, and concluded its opinion with these words, " To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose."

The facts in the *Gregory* case differ from those in the present case and there 112 (i) (1) (B) was involved instead of (A), but, despite these differences, the remarks of the courts apply with equal force to the transactions in the present case. Although here, as there, no step lacked legality and none may be disregarded, nevertheless, the artificiality of this tax-dodging scheme and its consequent failure to come within the purpose of the reorganization provisions of the statute is obvious. The transfer of the Cohn & Rosenberger, Inc., stock from Grandee, Inc., to Quill, Inc., for the latter's stock, was not a reorganization within the meaning of section 112 (i) (1) (A), since it was no part of the conduct of the business of either corporation, but was an added gesture made in a vain effort to save taxes.

There may be other reasons why the transfer of the stock of Cohn & Rosenberger, Inc., to Quill, Inc., by Grandee, Inc., was not a reorganization within the meaning of section 112 (i) (1) (A). Cf. *Alfred R. L. Dohme*, 31 B. T. A. 671. However, further discussion seems unnecessary in view of the decisions in the *Gregory* case, upon which this present decision is based.

Marcher does not claim that section 112 (b) (5)[2] applies to prevent recognition of his gain upon the receipt of the Quill, Inc., stock. We agree that it does not apply, since he did not transfer any property to Quill, Inc., and, consequently, did not transfer property to it in exchange for its stock. He received the Quill, Inc., stock as a stockholder of Grandee, Inc., and not in exchange for property which he transferred to Quill, Inc.

---

[2] Sec. 112 (b) (5). TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

Since Marcher's entire scheme was outside the purpose of the reorganization provisions of the statute, there is no occasion to attempt to stretch the wording of the act to include the transfer in question. The result is that the reorganization provisions do not apply and the various steps are tax-free or taxable, depending upon other provisions of the statute. The fact that Marcher realized a profit of $168,332.50 has been conceded. This profit to Marcher was taxable, since it does not come within any of the exceptions contained in section 112 and the general rule of (a) applies.

Quill, Inc., does not get a stepped-up basis for gain or loss on the Cohn & Rosenberger, Inc., stock, as Marcher had anticipated, despite the fact that Marcher's profit has now been held taxable to him. The general rule of section 113(a) of the Revenue Act of 1928 is that the basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property. If that general rule applies here, it follows that the Commissioner erred and the contention of Quill, Inc., is correct. However, there are certain exceptions to that rule, and, as the respondent contends, this case falls within one of the exceptions, i. e., under subsection (8), which is as follows:

(8) SAME—CORPORATION CONTROLLED BY TRANSFEROR.—If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112(b)(5) * * *, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain * * * recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

The transfer of 150 shares of the stock of Cohn & Rosenberger, Inc., by Royal Marcher to Grandee, Inc., comes precisely within the provisions of sections 112 (b) (5) and 113 (a) (8), *supra*. Therefore, the basis for gain or loss which the stock had in the hands of Grandee, Inc., was the same as it had had in the hands of Marcher, to wit, $3,800. Mrs. Marcher transferred some of her property to Quill, Inc., and Grandee, Inc., also transferred some property to Quill, Inc. Although these transfers were in one sense separate, they were, nevertheless, a part of one general plan. Thus, the two previous owners, Grandee, Inc., and Mrs. Marcher, transferred their property to a corporation (Quill, Inc.) solely in exchange for stock in such corporation; immediately after the exchange the two transferors were in control of the corporation; and the amount of stock received by each was substantially in proportion to the interest of that one in the property prior to the exchange. Grandee, Inc., was entitled to receive 750 shares of the stock of Quill, Inc., in exchange for the stock of Cohn & Rosenberger, Inc., which it transferred to Quill, Inc. The fact that it permitted these 750 shares of stock of Quill, Inc., to go

directly to its sole stockholder does not serve to take this transaction outside of section 112 (b) (5). The facts in the case of *Ared Corporation*, 30 B. T. A. 1080, were substantially similar and in that case the Board held that, under sections 203 (i), 203 (b) (4), and 204 (a) (8) of the Revenue Act of 1926, which sections are counterparts of the above quoted sections of the Revenue Act of 1928, the basis in the hands of the transferee was the same as it would be in the hands of the transferors. Here the transferor of the property consisting of the 150 shares of stock of Cohn & Rosenberger, Inc., was Grandee, Inc. No gain or loss to it was recognized in the transaction and, therefore, the property in the hands of Quill, Inc., takes the same basis for gain or loss which it had in the hands of Grandee, Inc. *Ared Corporation, supra; American Compress & Warehouse Co.* v. *Bender*, 70 Fed. (2d) 655. The basis which this property had in the hands of Grandee, Inc., was $3,800, as previously demonstrated. Quill, Inc., sold the stock for $172,260. The difference between these two figures represents the gain realized by Quill, Inc., in the taxable year. The Commissioner, in determining the deficiency, computed the profit in this way.

The stock of Cohn & Rosenberger, Inc., was the only asset which Grandee, Inc., had. The transfer of this asset by Grandee, Inc., to Quill, Inc., was in exchange for 750 shares of the stock of Quill, Inc. Grandee, Inc., was entitled to receive these shares in consideration of its transfer to Quill, Inc. Instead of receiving the 750 shares of stock of Quill, Inc., Grandee, Inc., permitted these shares to be issued directly to Marcher. This amounted to a liquidating dividend from Grandee, Inc., to its sole stockholder. This distribution to Marcher resulted in a gain to him of the excess of the value of the 750 shares of stock of Quill, Inc., over $3,800, the basis to him of his Grandee, Inc., stock. Yet the recognition of this gain to him does not serve to increase the basis which the stock of Cohn & Rosenberger, Inc., had in the hands of Quill, Inc., since Marcher did not transfer that property to Quill, Inc. Grandee, Inc., was the transferor within the meaning of section 113 (a) (8) and no gain to it was recognized upon the transfer. Grandee, Inc., was actually and legally created. The stock of Cohn & Rosenberger, Inc., was actually transferred to it, and it, in turn, transferred this property to Quill, Inc. None of these steps can be disregarded for, as the Circuit Court of Appeals said in the *Gregory* case, *supra*, "All these steps were real * * *. * * * all the proceedings had their usual effect." Thus, Marcher's scheme by which he intended to avoid tax not only failed in its purpose, but resulted in two taxable transactions where only one taxable transaction would have resulted from a direct sale by him of the stock of Cohn & Rosen-

berger, Inc. Like a boomerang, it was a dangerous thing to launch, but since Marcher deliberately used this involved method of disposing of his stock of Cohn & Rosenberger, Inc., the taxing statutes must be applied to the transfers which were actually made.

Reviewed by the Board.

> *Decision will be entered under Rule 50 at Docket No. 67808. Decision will be entered for the respondent at Docket No. 67800.*