*1057 OPINION.
Leeoh :
The respondent’s method of apportionment in computing the original deficiency was to divide the basis, applicable to the Tribune stock, between the old stock (Tribune) and the new stock (Building Corporation) in proportion to their respective values at the time the new shares were distributed, November 14, 1925. Petitioners assign error in the respondent’s application of the method prescribed in article 1599 (2) of Regulations 69. They assert there, since the new (Class A) stock represented solely the leaseholds and building, the only fair apportionment, for a basis for the Class A stock, is to apportion the basis of the Tribune stock between the value of those premises at No. 7 South Dearborn Street and the remainder of the Tribune Co.’s assets as of March 1, 1913.
The respondent now affirmatively pleads that the transaction involved did not effect a nontaxable reorganization and that the distributions made on November 14, 1925, were in the nature of ordinary dividends paid by the Tribune Co. to its stockholders. Respondent, therefore, seeks a redetermination sustaining the increased deficiencies now proposed on that basis.
*1058 The first question presented is whether a nontaxable reorganization was consummated, within the intendment of the pertinent provisions of the Revenue Act of 1926, set out in the margin.[2]
Briefly, the detailed facts show that for many years the Tribune Co., a close corporation, operated its principal business of publishing the Chicago Tribune newspaper, in the 17-story building it had erected at No. 7 South Dearborn Street on land demised under long-term school board leases. Upon outgrowing those quarters, it purchased land on the North Side and erected a new plant in 1920. In 1923, with the adoption of plans to build, at the same location, an office building as its permanent home, the Tribune Co. knew that within a short time it would have to dispose of the premises at No. 7 South Dearborn Street. The disposition of that property was not only relevant but necessary to th.e conduct of its business for three reasons, namely, (1) it had no further use for the building in the conduct of its newspaper business; (2) its charter limited its business activities and the amount of real estate it could own or hold; and (3) it desired to end the attacks made against it by the local and state political parties, due to its ownership of such leaseholds.
On December 15, 1923, the Tribune Co. entered into a contract to sell the premises to the Union Trust Co. as of May 1,1926, for a total consideration of $4,853,650, to be paid over a term of about 55 years. In January 1924, the Tribune Co. sought legal advice as to how its *1059 interests under such contract could be transferred for the sole benefit of’ its stockholders, without incurring corporate income tax liability, and with a minimum of tax liability upon the receipt by such stockholders of the proceeds from that contract. Upon advice of counsel the plan of making such transfer was held in abeyance, pending the passage of the then proposed revenue bill (Act of 1924) containing provisions as to nontaxable corporate reorganizations. However, no definite plan to accomplish that purpose was evolved until August or September 1925, at or about the time the Tribune Co. entered into a contract to sell the premises to the Union Trust Co. for $4,060,000 cash, the latter agreeing to take title pursuant to the contemplated plan of reorganization. The proposed plan of reorganization did not pertain to the disposition of the premises at No. 7 South Dearborn Street, except as a means by which its transfer to the Union Trust Co. could pass through the Tribune Cb.’s stockholders for the sole purpose of placing them in a position to receive the proceeds of tbe sale theretofore contracted by those two companies.
Pursuant to the preconceived plan (later modified in certain aspects as necessitated by circumstances and in order to accomplish a legal transfer of title to the Union Trust Co. or its nominee) the Tribune Co., at its expense, caused the Building Corporation to be organized, to which it transferred title to the Tribune Building and leaseholds, subject to the contract of sale, in exchange for that corporation’s 40,600 shares of Class A stock redeemable at $100 per share in cash or by transfer of title to the Tribune Building and leaseholds. Immediately the Tribune Co. passed such shares on to its stockholders, pro rata, as a dividend theretofore declared out of its last accumulated earnings. In further pursuance of the plan, the stockholders then sold such Class A stock to a syndicate organized and financed by the Tribune Co., for $4,060,000 cash, 'borrowed by the syndicate from the Union Trust Co., which syndicate, upon receipt of the Tribune Building and leaseholds, in liquidation of their Building Corporation stock, transferred them to the nominee of the Union Trust Co., for the same amount, with which the loan from that company was paid, and the Building Corporation was then dissolved.
No reorganization of any portion of the Tribune Co.’s business or properties for the purpose of actually operating them as the regular business of the Building Corporation was intended. Instead, that corporation was organized for the sole purpose of acting as a corporate conduit through which title to the premises could be passed pursuant to the preconceived plan designed to meet the technical requirements of the provisions of the revenue acts defining nontaxable reorganizations and to effect a distribution of the proceeds from the sale (already agreed upon as $4,060,000) to the stockholders of *1060 the Tribune Co. The Building Corporation was brought into being for no other purpose and, as was intended from its creation, it performed no other function, after fulfilling which, it was immediately put to death.
For all practical purposes, these facts parallel those in Gregory v. Helvering, 293 U. S. 465. In that case section 112 (g) of the Revenue Act of 1928 was controlling, which is substantially similar to section 203 (c) of the Revenue Act of 1926, presently applicable. The Supreme Court there said:
When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made “in pursuance of a plan of reorganization” [§ 112 (g)] of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here. Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose — a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.
Upon authority of Gregory v. Helvering, supra, we hold that the transactions here in controversy did not effect a reorganization within the intent of section 203 (h) (1), supra. Cf. Royal Marcher, 32 B. T. A. 76; Handbird Holding Corporation, 32 B. T. A. 238.
So, neither the Tribune Co. nor its stockholders were parties to a corporate reorganization.
The transfer of the South Dearborn Street premises by the Tribune Co. to the Building Corporation, in exchange for all the latter’s Class A stock, resulted in a realized gain to the Tribune Co. Revenue Act of 1926, sec. 202. That gain was not “recognized” and thus was not taxable to the Tribune Co. under section 203 (b) (4) of the Revenue Act of 1926.[3] But the Tribune Co. is not a petitioner here. The petitioners are shareholders or represent the interests of shareholders of the Tribune Co. That company declared a dividend out of its last accumulated earnings. Aside from the gain it realized on the *1061 exchange with the Building Corporation, the Tribune Co. then had earned surplus in excess of $4,060,000, earned since February 28, 1913.[4]
We conclude that each petitioner or petitioner’s decedent, herein, received in November 1925 an ordinary dividend, under section 201 (a) and (b) of the 1926 Act,[5] taxable as such upon a basis of $100 for each share of Class A stock so received. Their subsequent sale of such Class A stock, during 1925, for $100 per share resulted in neither gain nor loss.
This determination obviates the necessity of finding all of the facts relevant to and deciding the issue presented by petitioners’ assignment of error.
Reviewed by the Board.

Decision will be entered pursumit to Rule 50.

 Sec. 203. (a) upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.
*******
(b) (3)' No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.
* * * * * * *
(c) If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities In such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

*******

(h) As used in this section and sections 201 and 204 — ■
(1) The term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of'stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.
(2) The term “a party to a reorganization” includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock' and at least a majority of the total number of shares of all other classes of stock of another corporation.
(i) As used in this section the term “control” means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

 Sec. 203. (b) (4) No gain or loss shall be recognized ii property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

 The tax result here would apparently be the same had the earned surplus of the Tribune Co. then been less than $4,060,000. See Susan T. Freshman, 33 B. T. A. 394.

 See. 201. (a) The term “dividend” when used in this title (except in paragraph (9) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 19CL3.
(b) For the purposes of this Act every distribution is made out of earnings or1 profits to the extent thereof, and from the most recently accumulated earnings or profits.