**SNOWDEN v. McCABE, Collector of Internal Revenue.**

No. 8064.

Circuit Court of Appeals, Sixth Circuit.

May 10, 1940.

Dean P. Kimball, of Memphis, Tenn. (Emmett W. Braden, Allan Davis, and Armstrong, McCadden, Allen Braden & Goodman, all of Memphis, Tenn., on the brief), for appellant.

S. Dee Hanson, of Washington, D. C. (Horace Frierson, Jr., and O. W. Hughes, both of Nashville, Tenn., James W. Morris, Sewall Key, Norman D. Keller, and S. Dee Hanson, all of Washington, D. C., on the brief), for appellee.

Before HICKS, SIMONS and ARANT, Circuit Judges.

ARANT, Circuit Judge.

Appellant sued to recover an additional income tax paid for the year 1932, which the Commissioner assessed because of his disallowance of a deduction for a loss. The facts were stipulated, and the case was tried without a jury. Appellant challenges the District Court's dismissal of the suit, as well as the conclusion of law upon which it was based, that the transaction alleged to have given rise to the loss claimed was one in which no gain or loss is recognized under § 112 (b) (5) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev. Acts, page 511.

Appellant was one of twenty-six persons who, on March 1, 1913, owned equal undivided interests in the assets of the Wapanoca Outing Club, the fair market value of each interest at that time being $6,200.

By resolution adopted at an annual meeting on October 9, 1923, the name of the organization was changed to Wapanoca Farms.

On March 1, 1932, the Farms was cultivating some 2,000 acres of land, raising cotton, corn and other products. Its liabilities were then $83,089.09, and its assets $188,202.86. A bank to which it owed $70,000 on a note, secured by a mortgage, was unwilling longer to carry the loan. On March 5, the Crittenden Farms Company was organized as a corporation under the laws of Tennessee, with an authorized capital stock of 100 shares without par value. On March 27, appellant and twenty-three other members of the Farms subscribed for one share each, and subsequently paid in $3,000 apiece, $100 for the stock and $2,900 as paid-in surplus. On May 31, the real and personal property of the Farms was deeded to the Company, the consideration recited being the assumption of the Farms' mortgage debt and "other good and valuable considerations." On the same day the Company paid or rearranged satisfactorily all outstanding obligations.

On June 28, the following letter was sent to each of the twenty-six members of the Farms:

"On May 23, 1932, the members of the Wapanoca Outing Club met pursuant to call and instructed the officers of the Club to accept the offer of the Crittenden Farms Company to buy the property of the Club, both real and personal, and to transfer said property, using such farm or farms as are mutually agreed upon. They also requested the Secretary, after the transfer has been made, to notify all members of the action and that the Club had no assets, but existed in name only.

"This is to notify you that the property of the Wapanoca Outing Club has been transferred to Crittenden Farms Company and that the Club has no assets and exists in name only.

"For your guidance in making your Federal income tax return will say that the assets of the Club were sold for its debts; therefore, your certificate of stock (or membership) is worthless. To arrive at its value as of March 1, 1913, will say that on November 20, 1912, one membership sold for $6,200.00 cash; the minutes of the Club do not show that another membership (stock certificate) was sold until February 12, 1913, almost one year after the Federal income tax became operative; there-fore $6,200.00 should be taken as the value of a share of stock (membership) as of March 1, 1913.

"Respectfully,

"(Signed)   C. B. Stout,
"Secretary."

In his income tax return for the year 1932, appellant deducted $6,200 as a loss sustained on the sale of his interest in the Farms. The Commissioner disallowed the deduction and assessed an additional $1,-744.42 tax, together with $157.28 interest. Appellant paid the additional assessment and in due course filed a claim for refund, which was rejected. He now claims that his suit to recover the additional tax paid was erroneously dismissed.

Appellant contends that the evidence clearly shows that the stock of the Company was issued for cash, not for assets of the Farms; that the price the Company paid for the Farms' assets was assumption of its $83,089.09 indebtedness, asserted to be the equivalent of a cash consideration; that his interest in the Farms became a total loss when its assets were conveyed; and that the District Court erred in holding the conveyance of the Farms' assets within § 112(b) (5) of the Revenue Act of 1932 and no loss recognizable.

Appellee, on the other hand, contends that the several transactions constituted collectively, in effect, a single composite transaction whereby appellant and other owners of the Farms transferred their interests solely in exchange for stock in the newly created corporation, of which they were immediately thereafter in control, owning its stock substantially in proportion to their respective interests prior to the transfer. He asserts that the purpose of these transactions was merely to effect a plan to pay the bank, and satisfy other obligations, what was done being essentially the same as if the owners had conveyed the Farms' assets and, in addition, paid cash for stock in the Company, which paid off the Farms' obligations; and he denies that going through the form of paying cash for the stock, in addition to conveying the Farms' assets, prevents the transaction from being, in fact, an exchange within the intent of § 112 (b) (5).

Appellant's argument would be persuasive if we could look at the purchase of the stock and sale of the Farms separately and disregard their relation to the group purpose, to the accomplishment of

which each transaction was a necessary and complementary step. "Questions of taxation," however, "must be determined by viewing what was actually done, rather than the declared purpose of the participants." McReynolds, J., in Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 492, 68 L.Ed. 1001, 33 A.L.R. 520. "Taxation is an intensely practical matter and * * * the substance of the thing done, and not the form it took, must govern." McDermott, J., in Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309, 311. "Matters of form should be disregarded for those of substance." First Seattle D. H. Nat. Bank v. Commissioner, 9 Cir., 77 F.2d 45, 49. See also United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180. Authority is abundant that all the steps in the plan adopted by appellant and his associates must be considered and it must be determined whether they collectively constituted a single composite transaction within the intent of the statute. Weiss v. Stearn, supra; Hellebush v. Commissioner, 6 Cir. 65 F.2d 902; Prairie Oil & Gas Co. v. Motter, supra; Tulsa Tribune Co. v. Commissioner, 10 Cir., 58 F.2d 937; Helvering v. Security Savings & Commercial Bank, 4 Cir., 72 F.2d 874; First Seattle D. H. Nat. Bank v. Commissioner, supra; Labrot v. Burnet, 61 App.D.C. 47, 57 F.2d 413, 414.

The case at bar is not distinguishable from Labrot v. Burnet, supra. In that case, a husband and wife, doing business as equal partners under the name Holly Beach Farm, owned two farms. They organized a corporation with 500 shares of stock of $500 par value. The partnership subscribed for 494 shares, paying on account $86,440.53, and sold the farms to the corporation for $130,000, receiving in payment checks totalling $80,000 and a credit of $50,000 on the balance due on the stock subscription. The partners, in their individual tax returns, then deducted as a loss the difference between the cost of the farms to the partnership and the sale price to the corporation. The deduction was disallowed by the Commissioner, and the decision of the Board of Tax Appeals upholding his action was affirmed by the Court of Appeals of the District of Columbia.

The Court said:

"The Board of Tax Appeals, in considering the application of that section to this case said: 'The substance of the transaction is that the partnership exchanged the farms for stock of the corporation, and that after the exchange the partnership was in control of the corporation, as the word control is used in the section of the statute just quoted. We are of opinion that the transaction is essentially one of the kind in which Congress did not intend for the purposes of taxation to recognize either gain or loss, and that we should be governed by its substance and not its form.' * * *

"Appellants neither gained nor lost by this transaction.

"The fact that they incorporated themselves into a chartered company in no way enhanced their right to deduct losses from their taxable income. Tsivoglou v. United States (C.C.A.) [1 Cir.], 31 F.(2d) 706.

"Before their conveyance to the company they owned together a farm worth approximately $250,000.

"After their conveyance their certificates of stock in the corporation were for all practical purposes their muniments of title to the same property.

"If considered as a sale, it was, in effect, a sale to themselves for about half of the cost or value of the property, and we are of opinion that such a sale would not have been made to others for such a price.

"While if deduction of the other half of the value invested was permissible as a loss, it follows that the appellants could as well have sold to themselves for a merely nominal consideration and deducted a greater loss."

We are of the opinion that this reasoning is sound and applicable to the case at bar. See also Helvering v. Security Savings & Commercial Bank, supra.

Prior to organization of the corporation, appellant and his partners owned the Farms and owed a note of $70,000 that had been called. Instead of taking $3,000 each out of their pockets and paying the bank and then owning the property unencumbered, they paid the money in form for stock and conveyed the Farms' assets to the Company, which paid the bank, accomplishing substantially the same result. For all practical purposes, their certificates of stock are their muniments of title to the same property; they have neither gained nor lost by the transaction.

Appellant contends that an ordinary sale of the Farms' assets was made to the Company, in return for its assumption of obligations totalling $83,089.09. The unsub-

stantial basis of this contention appears when it is recalled that the Farms' assets exceeded its liabilities by $105,113.77 on March 1, 1932. As in Labrot v. Burnet, supra, if the conveyance be considered a sale, it was in substance a sale by the partners to themselves, and at a little less than 44% of the book value of the property. Appellant and his partners doubtless would not have thought of selling the Farms' assets to others on any such terms. Had they been sold at a price which it is reasonable to suppose, in view of their book value of $188,202.86, they would have brought, instead of $83,089.09, it is clear that the owners of the Farms would have experienced no such loss as is here claimed. We conclude that an apparent loss in the circumstances here presented is not recognizable under the applicable statute.

It was argued that even if the transaction here under consideration was a transfer of property for stock or securities it would not come within § 112 (b) (5) for the reason that the ratio of stock ownership to ownership of property conveyed is not substantially the same, inasmuch as petitioner now owns one twenty-fourth of the stock, whereas his interest in the Farms was one twenty-sixth, a difference of .321%. We are of the opinion that this contention is without substance. Labrot v. Burnet, supra. See Ared Corporation v. Commissioner, 30 B.T.A. 1080.

Judgment affirmed.