(No. 24596.—

THE PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellant, *vs.* JOHN C. MARTIN, State Treasurer, *et al.* Appellees.

*Opinion filed June 20, 1938.*

WILLIAM E. MOONEY, for appellant.

OTTO KERNER, Attorney General, (JOHN B. HARRIS, of counsel,) for appellees.

Mr. Justice Stone delivered the opinion of the court:

Appellant filed its complaint in the circuit court of Sangamon county against appellees as the State Treasurer and the Director of Insurance to prevent payment into the treasury of this State, for public use, the sum of $19,185.97, paid by appellant, under protest, as a privilege tax for the fiscal year July 1, 1937, to June 30, 1938. On hearing, the complaint was dismissed, and a review is sought here.

The appellant, the Pacific Mutual Life Insurance Company (hereinafter called the new company) was organized on July 22, 1936, and under the control of the Commissioner of Insurance of California carried on the business of the Pacific Mutual Life Insurance Company of California, (hereinafter called the old company.) This transaction was conducted by the Commissioner of Insurance of the State of California. The old company was licensed to do business in Illinois and had paid the privilege tax in July, 1936, for the fiscal year from July 1, 1936, to June 30, 1937.

The privilege tax that the Director of Insurance required the new company to pay for the privilege of doing business in this State from July 1, 1937, to June 30, 1938, was assessed under section 409 of the Insurance Code, in effect July 1, 1937. (Ill. Rev. Stat. 1937, chap. 73, par. 1021.) Sub-section 1 of section 409 provides that every foreign or alien company authorized to do business in this State, except fraternal societies, shall pay an annual privilege tax for the year beginning July 1, and ending June 30, following. This tax is, by the act, fixed at two per cent on the gross amount of the premium income on direct business received during the preceding calendar year on contracts covering risks within this State. Certain deductions are to be allowed as set out in that sub-section and in sub-section 2 of that section. Sub-section 3 provides: "If a company survives or was formed by a merger, consolidation, reorganization or reincorporation, the premiums received, and amounts re-

turned or paid, by all foreign or alien companies parties to such merger, consolidation, reorganization or reincorporation, shall, for the purposes of determining the amount of the tax imposed by this section, be regarded as received, returned or paid by such surviving or new company."

Under the "Retaliatory act" of this State, (State Bar Stat. 1935, chap. 73, par. 80,) the per cent taxed against foreign insurance companies of the State of California is two and six-tenths per cent. That amount was applied in arriving at the protested tax.

Pursuant to provisions of insurance laws of this State, appellant, prior to March 1, 1937, made a return to the Director of Insurance of Illinois for the business it did in this State in 1936, for the purpose of affording a basis for the privilege tax to be assessed for the year commencing July 1, 1937. This tax, under the statute, is payable in advance. About May 15, 1937, the Director of Insurance made an assessment of that tax on a basis which included not only the business done by the new company from July 22, to December 31, 1936, but included premiums collected and business done by the old company for the period from January 1, 1936, to July 22, 1936. The total sum assessed against appellant was $30,737.12. Of this amount appellant voluntarily paid $11,551.15 for the period from July 22 to December 31, 1936, and it protested the sum of $19,185.97, representing the business done by the old company between January 1, 1936, and July 22, 1936. The appellant was admitted and licensed to do a general business of life and accident insurance in Illinois and paid for the privilege of transacting such business for the period from July 27, 1936, to June 30, 1937, the sum of $25 per month, or $300.

The hearing in this case was on bill and answer. No replication to the answer was filed. No issue of fact is raised. No constitutional questions were raised in the trial court and so none appear here for consideration.

Appellant, to secure reversal of the decree of the circuit court, contends that the Director of Insurance of Illinois had no authority to assess the privilege tax on the basis of business transacted in Illinois by the old company; that its business had been reinsured by the new company; that a privilege or license tax is prospective, only, and could be based only upon premium income received by the appellant, and that the assumption of the payment of taxes in the rehabilitation and reinsurance agreement entered into with the Insurance Commissioner of California did not contemplate the payment of a privilege tax based on the business of a company that had ceased doing business. It is also argued that sub-section 3 of section 409 of the Insurance Code, above quoted, is not applicable to this case as it was in force only from July 1, 1937, and to apply it here would give it a retroactive effect which the act indicates the legislature did not intend.

The first question, therefore, is whether section 409 of the Insurance Code may be applied to determine the measure of the privilege tax properly to be assessed against appellant. The People concede that if the business of the old company had been liquidated its business could not be considered a part of the basis for a privilege tax for the fiscal year beginning July 1, 1937; but it is urged that the department is not attempting to collect a tax from the old company for that fiscal year but that the business of the old company in this State during 1936, prior to July 22, when it went into the hands of the conservator, is to be taken for the purposes of determining the amount of the tax imposed under section 409 of the Insurance Code, and is to be regarded as received by appellant, the new company, for the reason that appellant is but a rehabilitation and reorganization of the old company. In other words, the business of the old company done in this State during the year 1936 is to be used only as a yardstick to measure the privi-

lege tax to be assessed against appellant for the fiscal year beginning July 1, 1937.

The fact that the statute makes the amount of the privilege tax for the year in prospect depend upon the amount of business done during a past period, does not make the statute retroactive since the tax required here to be paid did not become due until July 1, 1937, and under the terms of the statute might, without penalty, be paid any time during that month. While, under the insurance statutes applicable prior to July 1, 1937, it was the duty of the appellant to make report, and of the Director of Insurance to give notice of the tax, these preliminary steps do not affect the validity of the privilege tax, since section 9 of the act then in force (State Bar Stat. 1935, chap. 73, par. 87) specifies that failure to receive the notice of assessment shall not relieve the company from its obligation to pay the tax nor invalidate the assessment of the tax.

As stated hereinabove, the assessment made by the Director of Insurance included, as its basis, the premiums received by the old company in 1936, up to July 22. We are of the opinion that, since the privilege tax is payable in advance for the year in prospect beginning July 1, the provisions of sub-section 3 of section 409 of the Insurance Code which went into effect July 1, 1937, are, without giving the act retroactive effect, applicable. It follows, if appellant survives or was formed by a merger, consolidation, reorganization or reincorporation of the old company, sub-section 3 applies, and the basis of the calculation of this privilege tax is correct. Regardless of the applicability of the act of 1937, however, if, in equity, the old and new companies are, in fact, the same, appellant is not entitled to the relief sought.

This brings us to the primary question in the case. Is the appellant such an insurance company as is described in sub-section 3 of section 409? Was the privilege tax against the new company for the fiscal year beginning July 1, 1937,

properly measured, in part, by premiums received during the first half of the year 1936 by the old company? Appellant asserts there is no privity between the new company and the old company, while the appellee asserts that, in truth and in fact, appellant is the same insurance company as the old company.

The facts concerning this issue may be gleaned from the opinion of the Supreme Court of California in *Carpenter v. Pacific Mutual Life Ins. Co. of California*, 74 Pac. (2d) 761, and from the answer of the appellees in this case, of which there is no denial. These facts are that on July 22, 1936, the superior court of Los Angeles county, California, declared the old company insolvent. The Commissioner of Insurance was, under applicable statutes of that State, and with the consent of the old company, placed in control, and, through the instrumentality of the new company, operated the old company until December 4, 1936, when the rehabilitation and reinsurance agreement was approved by the court. On July 22, 1936, the commissioner, as conservator, presented an agreement for a rehabilitation of the company, which he had worked out. To this plan the old company, on the same day, filed its consent. On the same day, a petition was filed by the commissioner entitled: "A petition for order permitting, approving and authorizing rehabilitation, sale and transfer of the assets and reinsurance plan and agreement of Pacific Mutual Life Insurance Company of California." This petition recites that, pursuant to prior orders, the petitioner had worked out a rehabilitation and reinsurance plan which provided for the organization by the commissioner of a new corporation with capital stock of $1,000,000, consisting of ten thousand shares of the par value of $100 each. Under this plan the commissioner was to purchase all of that stock with the assets, books, papers and business of the old company, which the petition stated was worth $3,000,000, and to hold the stock for the benefit of policy-holders who might not agree to the

rehabilitation plan and who desired to file claims against the commissioner as conservator of the old company. The new company was to reinsure all life policies in their exact terms with the exception of certain non-cancellable policies which the court found was the cause of the financial difficulty of the old company. These last named policies were to be scaled on bases from ninety per cent to as low as twenty per cent. The new company was to pay all taxes due any State. The petitioner alleged that if the plan was approved, the business carried on by the old company could continue without interruption, preserving good-will and the agency organization. The old company filed consent to this plan on July 23. The next day the new company filed an intervening petition to have its title to the assets of the old company confirmed and its contract approved.

On September 25, the delay apparently having been caused by reason of the feeling on the part of the judge who first sat in the cause that he was disqualified, further action was taken by another judge confirming all that had been done and the commissioner, as conservator, apparently re-filed a petition for approval of rehabilitation and reinsurance agreement. This petition recites, among other facts, that "since July 22, 1936, your petitioner, as conservator, and through the instrumentality of the new company, has continued to carry on and conduct the business and affairs of the old company and to preserve, as far as possible, its good-will, going concern value and agency organization." The petition also alleges that no plan had been presented which afforded the policy-holders of the old company the measure of protection provided by that contained in the proposed rehabilitation and reinsurance agreement "under which your petitioner proposes to rehabilitate the old company."

The court set the cause for hearing in October, and on December 4, thereafter, as we have seen, approved the plan submitted by the commissioner. The decree of the chan-

cellor included findings that the plan proposed by the commissioner should be approved and that the assets of the old company were worth several million dollars and if sold would suffer substantial loss.

It is apparent, from this statement of what occurred in the California courts, that the organization set up by the new company was identical with the old, except that it was a stock company instead of a mutual company. It appears, however, that a plan for mutualization later on was included in the rehabilitation agreement, the new name designated the company as a mutual company, and it apparently was the thought of the commissioner that, in order to protect claims of dissenting policy-holders, he should have, as evidence of interest in the company that was to continue with the business, the stock of the new company to meet the claims against the old company. No new capital was put in by the new company or by anyone else. The only change in the organization, so far as the record shows, other than indicated, was the dropping of the word "California" from the name of the old company. The plan provided for the turning over of over three million dollars in assets, books, records and property to the new company for one million dollars in stock. The finding of that court was that in all of its business, except on the non-cancellable policies, the old company was sound. The net result of this transfer was to rid the company of the dangerous features of its non-cancellable policies.

It seems clear from these facts that the new company comes within the language of sub-section 3 of section 409 of the Insurance Code and that it "survives or was formed by a merger, consolidation or reorganization or reincorporation" of the old company. This was the stated purpose of the commissioner in his petition for approval of his plan of rehabilitation.

It is said here that under the California Insurance Code, what took place must be held to be the organization of an

entirely new company. A reading of the opinion in *Carpenter* v. *Pacific Mutual Life Ins. Co. of California, supra,* discloses that the contention was made that the insurance law did not permit the rehabilitation of an insolvent insurance company by the organization of a new company. It was held, however, that this claim was without merit; that under that law such was proper and, furthermore, that it amounted, in effect, to a means of preserving and rehabilitating the business of the old company.

Appellant contends that, while it agreed to pay the taxes of the old company due various States of the Union, the old company had paid its privilege tax for the year following July 1, 1936, and there was nothing upon which such an agreement could operate, as the old company did no business for that year in Illinois. What is sought, however, is not to collect a tax from the old company for the fiscal year beginning July 1, 1936, but the tax involved here is assessed against the new company in prospect for the privilege of doing business in this State for the year following July 1, 1937, and is, in part, assessed on the basis, and measured by, the amount of premiums received by the old company during 1936, not because the new company reinsured the old company, but because the business of the old company was the business of the new company. The reinsurance had nothing to do with the measuring of the tax. The business of the old company done during 1936 is, in other words, but the measuring-stick with which to determine, in part, what the new company should pay for the privilege of doing business in this State for the year to follow. It is quite evident, under the plan, that the value of the new company's business in this State, for the year following July 1, 1937, was greatly enhanced by the business done by the old company during the first half of 1936.

Appellant says that when it applied for license to do business in this State and paid the sum of $300, and the same was accepted by the insurance department, the latter

became estopped to assess the tax here involved. It is stated by the appellee Director of Insurance that such was accepted through a mistake and inadvertence not binding on the department, and that, in the calculation of the amount here involved, credit has been given to the new company for that amount. There is nothing in the record to show that the facts of rehabilitation of the old company were known to the insurance department when the $300 was accepted. It is apparent that acceptance of the $300 cannot estop the insurance department from assessing the privilege tax required by law.

We are of the opinion that the facts in this case show that, for the purposes of assessing this tax, the new company must be considered but a rehabilitation of the old, and in fact, if not in strict legal construction, the same company, and that the provisions of the Insurance Code herein discussed are applicable. The chancellor was, therefore, right in dismissing the complaint, and the decree is affirmed.

*Decree affirmed.*