(No. 33170.—

COMMERCIAL LIFE INSURANCE COMPANY OF MISSOURI, Appellee, *vs.* ROBERT E. BARRETT, Director of Insurance, *et al.*, Appellants.

*Opinion filed September 23, 1954.*

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., GEORGE W. MCGURN, GEORGE W. SCHWANER, JR., and MARK O. ROBERTS, all of Springfield, of counsel,) for appellants.

WANLESS, CRAVEN & GIFFIN, of Springfield, (JAMES C. CRAVEN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case concerns the legality of an annual privilege tax assessed by the Director of the Department of Insurance against Commercial Life Insurance Company of Missouri. The company paid the disputed tax of $1822.30 under protest, and instituted this action to review the decision of the Director and to restrain the transfer of the funds in question from the protest fund into the State treasury. The circuit court of Sangamon County entered a decree finding that the assessment was void and directing that the funds paid under protest be returned to the plaintiff. The Director and the State Treasurer have appealed.

The facts are stipulated. On October 22, 1952, the plaintiff, a life, accident and health insurance company incorporated in Missouri, entered into a contract with the Commercial Life Insurance Company, an Illinois assessment legal reserve life insurance company, effective as of midnight December 31, 1952. By the contract, the Missouri

corporation agreed to reinsure all policies issued by the Illinois corporation which were in good standing on December 31, 1952, and to discharge all liabilities of the Illinois corporation. The Illinois corporation agreed to transfer all its property, good will and risks to the Missouri corporation, and to cease to engage in the insurance business on December 31, 1952.

The agreement was approved by the Department of Insurance of this State and of other interested States, and became operative on December 31, 1952. The Missouri corporation received its certificate of authority to transact business in Illinois on November 12, 1952. It did no business in this State, however, during the year 1952.

The tax which is here involved is the privilege tax imposed by section 409(1) of the Insurance Code. (Ill. Rev. Stat. 1953, chap. 73, par. 1021(1).) It requires every "foreign or alien company authorized to do an insurance business in this State" to pay an annual privilege tax for the year beginning July 1, and ending the ensuing June 30. The tax is levied at two per cent of the "gross amount of premiums on direct business received during the preceding calendar year on contracts covering risks within this State."

Acting under this statute, the Director of Insurance assessed against the plaintiff a privilege tax in the amount of $1822.30 for the privilege of doing an insurance business in Illinois during the year commencing July 1, 1953. Although the plaintiff had done no business in Illinois during 1952, the Director considered as premiums received by the plaintiff on direct business done in Illinois during 1952, the sum of $91,114.95, which was the amount of premium income of the Illinois company in 1952. The propriety of the assessment so computed is the only issue in the case.

Plaintiff contends that its tax is governed by section 413(1) of the Insurance Code, which is apparently intended to fix the amount of the privilege tax imposed upon

a newly admitted foreign insurance company until such time as it has acquired the tax base specified in section 409. It provides that every "foreign or alien company" applying for a certificate of authority to transact business in Illinois shall, before its issuance, pay to the Director of Insurance a tax of $25 per month for the privilege of transacting business in this State, from the date of issuance of the certificate to June 30 of the calendar year succeeding the calendar year in which the certificate is issued. (Ill. Rev. Stat. 1953, chap. 73, par. 1025.) Plaintiff proposes that since it was granted authority to conduct business in Illinois on November 12, 1952, it should pay the tax in accordance with section 413 until it has completed business operations for the period July 1, 1953-June 30, 1954.

Defendants maintain that plaintiff should pay according to section 413(1) only until July 1, 1953. They rest the challenged assessment primarily upon section 409(1). The difficulty with their position is the acknowledged fact that plaintiff received no "premiums on direct business" in 1952 within this State. To meet this difficulty defendants point to section 409(3) which provides: "If a company survives or was formed by a * * * reorganization * * * the premiums received * * * by all foreign or alien companies parties to such * * * reorganization * * * shall, for the purposes of determining the amount of the tax imposed by this section, [409] be regarded as received * * * by such surviving or new company." By this explicit provision, premiums received by a predecessor foreign company which is a party to a reorganization are to be deemed as received by the new foreign company for the purposes of assessing the privilege tax. But we find nothing in section 409 to justify imputing to a surviving or new foreign company the direct premium income of a domestic company which has been reorganized, leaving as its survivor only the foreign company. Indeed,

the fact that the legislature has, in one specifically described situation, authorized the premium income of one company to be treated as that of another for the purpose of assessing the tax, argues strongly that the practice is not authorized in other situations. Even if the contract between the two companies be considered as one effecting a reorganization, as the plaintiff concedes it may be for the purpose of the case, section 409(3) does not reach the present situation in which the predecessor company is a domestic corporation.

The absence of any statutory provision authorizing assessment of the tax in the manner here employed is not remedied by the authorities cited. In *Pacific Mutual Life Ins. Co.* v. *Martin,* 369 Ill. 158, one foreign mutual insurance company succeeded another by reorganization, and it was held that the Illinois premium income directly received by the predecessor might be imputed to the successor in determining the amount of the privilege tax for the period beginning July 1, 1937. The facts fell squarely within section 409(3) of the Insurance Code, and the basic issue was whether that provision, which had become effective July 1, 1937, was applicable. The court held that it was, and then added the statement relied upon by defendants: "Regardless of the applicability of the act of 1937, however, if, in equity, the old and new companies are, in fact, the same, appellant is not entitled to the relief sought." That statement must be read in the light of the fact that both the old and the new companies were subject to the privilege tax and the court was concerned with the possibility that the reorganization might be used as a device for evading the tax. In this case, there is no possibility that by the process of reorganization a tax otherwise due may be evaded, because here the predecessor domestic company has not been subject to the tax.

Defendants also rely upon *Central States Life Ins. Co.* v. *State,* 190 Ark. 605, 80 S.W. 2d 629. The issue in-

volved in that case, however, was not at all the issue here. There the foreign successor to a domestic company resisted the Arkansas privilege tax upon the ground that the "reinsurance agreement" between the two companies was no more than an assignment which made the foreign successor the agent of the domestic company for liquidation purposes. The Arkansas court rejected this contention and sustained the tax, holding that the status of the foreign successor was "that of a foreign life insurance company doing business in Arkansas." In the present case there is no similar claim of permanent immunity from the privilege tax because the predecessor corporation was not subject to it; the issue here is narrow and concerns only the method prescribed by statute for computing a privilege tax admittedly due.

Defendants cannot prevail just because of the possibility that affirmance of the judgment of the circuit court may result in payment of a "nominal" tax under section 413(1) for the period July 1, 1953, to June 30, 1954, or even in the payment of no tax for a part of that period. If the statutory provisions do not adequately cover the situation where a foreign insurance company has received no direct premium income during the calendar year of its admission or subsequent thereto, the remedy does not lie here.

The decree of the circuit court of Sangamon County is right, and it is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.