(No. 34136.—

The Lincoln National Life Insurance Company, Appellant, *vs.* Justin T. McCarthy, Director of Insurance, *et al.*, Appellees.

*Opinion filed January 24, 1957—Rehearing denied March 19, 1957.*

CLYDE J. COVER, of Fort Wayne, Indiana, and GIL-LESPIE, BURKE & GILLESPIE, of Springfield, (LOUIS F. GILLESPIE, HUGH J. DOBBS, and GEORGE B. GILLESPIE, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (MARK O. ROBERTS, and JOHN G. SMITH, of counsel,) for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Plaintiff, Lincoln National Life Insurance Company, filed its complaint in the circuit court of Sangamon County against defendants to prevent the payment into the treasury of this State, for public use, the sum of $17,857.47 paid by plaintiff under protest, as a privilege tax for the period of July 1, 1953, to June 30, 1954. Upon hearing the trial court held for the defendants and directed the State Treasurer to transfer the $17,857.47, paid under protest, into the general fund. Since this is a case relating to the rev-

enue, plaintiff appeals directly to this court. Ill Rev. Stat., 1955, chap. 110, par. 75(1)(b).

The plaintiff and the Reliance Life Insurance Company of Pittsburg, hereinafter called Reliance, were both, prior to January 1, 1953, foreign life insurance companies authorized to do business in Illinois. They were domiciled in Indiana and Pennsylvania respectively. In 1951 plaintiff began to acquire the capital stock of Reliance; and by the spring of 1952, all the stock of Reliance was owned by plaintiff. On November 24, 1952, plaintiff and Reliance entered into a reinsurance and assumption agreement, effective January 1, 1953, whereby the assets of Reliance were transferred to plaintiff which assumed all the liabilities of Reliance of every kind and nature; and plaintiff was substituted and novated in the place of Reliance as the primary insurer on all insurance contracts of Reliance. Although the corporate form of Reliance was left intact, the agreement provided for its liquidation within a reasonable period.

Under section 409 of the Illinois Insurance Code, (Ill. Rev. Stat. 1955, chap. 73, par. 1021,) an annual tax is assessed against foreign insurance companies for the privilege of doing insurance business within this State from July 1 of the calendar year to June 30 of the ensuing year. The amount of the tax is computed by a formula based upon "the gross amount of premiums on direct business received during the preceding calendar year on contracts covering risks within this State * * *." In computing the amount section 409(3) provides: "If a company survives or was formed by a merger, consolidation, reorganization or reincorporation, the premiums received, and amounts returned or paid, by all foreign or alien companies parties to such merger, consolidation, reorganization or reincorporation, shall, for the purposes of determining the amount of the tax imposed by this section, be regarded as received, returned or paid by such surviving or new company." Ill. Rev. Stat. 1955, chap. 73, par. 1021(3).

Relying upon section 409(3) the defendant Director of Insurance assessed plaintiff for the year beginning July 1, 1953, on the basis of gross premiums received by both plaintiff and Reliance during the calendar year 1952. The portion of the assessment based on Reliance's business, $17,857.47, was paid by plaintiff under protest and is now in dispute.

The sole issue before us is whether the purchase and reinsurance agreement between plaintiff and Reliance is within the purview of section 409(3) of the Insurance Code.

Plaintiff contends that the transaction was not a "merger, consolidation, reorganization or reincorporation" within the meaning of the statute, and that Reliance still survives as a distinct corporate entity, and therefore the statute does not apply. The defendant Director of Insurance, however, insists that the transaction is within the meaning of section 409(3), and that plaintiff's assessment must be based upon the combined gross premiums of plaintiff and Reliance for the preceding year.

In interpreting the statute before us we first note that it applies only for foreign companies. (*Commercial Life Insurance Co.* v. *Barrett*, 3 Ill.2d 505.) The purpose of the statute seems clear. The legislature determined that the amount of the annual tax upon foreign insurance companies for the privilege of doing business in this State from July 1 until June 30 of the ensuing year shall bear a direct relationship to the amount of business done within this State. The tax is payable in advance, and the legislature provided that the tax would be measured by the business done by the corporation within the State for the preceding calendar year. This measuring stick is based upon the presumption that the gross premiums received by an insurance company during the preceding calendar year on contracts covering risks within Illinois will reasonably approximate the gross premiums which the company will

receive in the subsequent year; and that the privilege tax based on such premiums would be fairly apportioned among all foreign insurance companies doing business within the State. Section 409(3) was designed to apply this standard to the gross amount of insurance premiums received by such company or companies on direct business covering Illinois risks in the preceding year, where such business is continued in Illinois under a changed corporate form.

In the light of the general purpose of the statute, we consider the specific language used—"merger, consolidation, reorganization or reincorporation." Plaintiff earnestly contends that these terms must be limited by what it calls well understood legal and technical concepts. Plaintiff points out that the transaction between plaintiff and Reliance is neither within the meaning of merger and consolidation as used in article X of the Insurance Code, (Ill. Rev. Stat. 1955, chap. 73, pars. 768-784,) nor within the meaning of reorganization as used in article XII. (Ill. Rev. Stat. 1955, chap. 73, pars. 792-798.) It further points out that reinsurance is treated separately from merger and consolidation in article XI of the Code, (Ill. Rev. Stat. 1955, chap. 73, pars. 785-791,) and therefore contends that the omission of the word "reinsurance" from section 409(3) precludes the application of that section to the transaction under consideration. We do not think plaintiff's contention is sound. These terms as used in articles X, XI, and XII apply only to domestic companies or foreign companies reorganized as domestic companies. And, since section 409(3) has no application to such companies, the usage is not determinative. This is especially true since merger, consolidation, reorganization and reincorporation are not terms having an inflexible meaning except when defined by statute. These transactions described in section 409(3) of necessity must all take place under the laws of foreign States. (15 Fletcher, Corporations (Rev. ed. 1938), secs. 7048 and 7209.) It is clear that there is no uniformity

or consistency in either the procedures or the terminology in the corporate laws of other States relating to such transaction. 15 Fletcher, Corporations, (Rev. ed. 1938) secs. 7048-7060, 7066 and 7076; cf. Michigan, Comp. Laws, 1948, vol. 3, sec. 511.20, p. 10846; Iowa Code, 1954, chap. 521, p. 1781; Kentucky Rev. Stat. 1955, sec, 304.952; Kans. Gen. Stat. 1949, sec. 40-309, p. 1185.

It is also clear that the term "reinsurance" has various accepted meanings, some of which would be clearly within the spirit and purpose of section 409(3) and others which would not. Reinsurance could embrace only a single risk or line of risks, or it might, as here, encompass the entire business of a company. It may be used in the sense of an indemnity contract, where one company is indemnified with respect to its risk, or in the sense of a purchase and transfer of policies effecting a novation of the reinsurer for the reinsured. See article XI of the Insurance Code which deals with both types of reinsurance. Ill. Rev. Stat. 1955, chap. 73, pars. 785-791.

We must conclude that the terms used in section 409(3) have not been precisely defined by the legislature. In such a case, the primary purpose of statutory construction is to ascertain the legislature's intention, not only from the language which it has used, but also from the reason and necessity for the act, the evils sought to be remedied, and the objects and purposes sought to be obtained. (*Kloss* v. *Suburban Cook County Tuberculosis Sanitarium District*, 404 Ill. 87; *Harding* v. *Albert,* 373 Ill. 94; *Baker & Conrad, Inc.* v. *Chicago Heights Construction Co.* 364 Ill. 386; *Hinsdale Sanitary District* v. *Washburn,* 354 Ill. 240.) A statute or ordinance must be construed according to its intent and meaning, and a situation that is within the object, spirit and meaning of the statute is regarded as within the statute, although not within the letter; and a situation that is within the letter is not regarded as within the statute

unless also within its object, spirit and meaning. *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224.

Although the terms of section 409(3) when used separately may bring to the mind of the corporate lawyer certain forms and procedures, we repair to the wisdom of Judge Learned Hand as stated in *Cabell* v. *Markham,* (CCA 2d) 148 F. 2d 737, 739: "But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

It was in this spirit that we first construed this section in *Pacific Mutual Life Ins. Co.* v. *Martin,* 369 Ill. 158. There the Director of Insurance applied the section in assessing the privilege tax against a new California company. The new company was formed pursuant to a petition of the Commissioner of Insurance of California for the "rehabilitation" of an insolvent insurance company which had formerly done business in Illinois. The "rehabilitation" was accomplished by having the Commissioner purchase all the stock of the old company and reinsure its life policies in their exact terms.. The old company was to continue for a short period of time for purposes of liquidation. (See *Carpenter* v. *Pacific Mutual Life Ins. Co.* 10 Cal.2d. 307, 74 P.2d 761, 771.) When faced with the assessment based on the gross business of the old company, the new California company protested. The "rehabilitation" plan in California was unknown to Illinois law and did not neatly fall into the categories listed in the statute. However, we construed the terms "merger, consolidation, reorganization, or reincorporation" as used in a generally descriptive sense only. We affirmed the assessment of the tax, and at page 167 we stated: "We are of the opinion that the facts in this case show that, for the purposes of assessing this

tax, *the new company must be considered but a rehabilitation of the old, and in fact, if not in strict legal construction, the same company,* and that the provisions of the Insurance Code herein discussed are applicable." (Emphasis supplied.)

This practical construction of section 409(3) was implicitly approved by us in *Commercial Life Ins. Co.* v. *Barrett,* 3 Ill.2d 505, 509, where we stated that the facts of the *Pacific Mutual case* fell squarely within section 409(3) and explained that there the court was concerned that the "reorganization might be used as a device for evading the tax."

Taxation is an intensely practical matter and the substance, not the form, of the transaction should govern. (*Weiss* v. *Stearn,* 265 U.S. 242, 254; *Snowden* v. *McCabe,* 111 F.2d 743, 745; *Prairie Oil & Gas Co.* v. *Motter,* 66 F.2d 309, 311.) From the practical viewpoint, we clearly recognize that it was the legislative purpose to prevent an avoidance of the privilege tax by the use of a changed or different corporate form. If the legislature has not enumerated each and every ingenious device that might be used to accomplish such avoidance, we think it has so clearly stated its purpose that we deem the oft quoted opinion of Mr. Justice Holmes in *Johnson* v. *United States,* 163 F.30, 32, as appropriate: "A statute may indicate or require as its justification a change in the policy of the law, although it expressed that change only in the specific cases most likely to occur to the mind. The legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for the courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

With these considerations in mind we again consider the facts before us. Pursuant to plan, approved by the insurance departments of Indiana and Pennsylvania, plaintiff acquired ownership of all the stock of Reliance, and became novated and substituted as primary insurer on all the policies of Reliance. While Reliance retained its formal corporate identity for practical business reasons its dissolution was contemplated within a short period of time. The net practical result is that plaintiff continued to do the combined business of both plaintiff and Reliance in the State of Illinois. We can see no distinction in the practical net result from that attained in the *Pacific Mutual case* or from an Illinois merger under article X of the Insurance Code. Ill. Rev. Stat. 1955, chap. 73, pars. 768-784.

The sole purpose for the continued existence of Reliance was to facilitate the transfer of its business to plaintiff. In the circumstances of the instant case, to respect the remaining corporate shell of Reliance would result in a patently unjust discrimination in the application of the privilege tax contrary to the clear intent of section 409(3). In such a case the legal form will be disregarded. *Dregne* v. *Five Cent Cab Co.* 381 Ill. 594; *Superior Coal Co.* v. *Department of Finance,* 377 Ill. 282; *Chicago, Milwaukee & St. Paul Railway Co.* v. *Minneapolis Civic & Commerce Ass'n,* 247 U.S. 490; cf. *Taylor* v. *Standard Gas & Electric Co.* 306 U.S. 307.

The good faith and proper business motives of plaintiff do not affect our conclusion that the end result of the transaction falls within the language and meaning of section 409(3). The decree of the trial court must accordingly be affirmed.

*Decree affirmed.*