Medical Center Commission, a Body Politic and Corporate, Petitioner-Appellant, v. John Powell, et al. (Chicago Transit Authority, a Municipal Corporation), Defendant-Appellee.

Gen. No. 53,497.

First District, First Division.

April 27, 1970.

Rehearing denied May 21, 1970.

William J. Scott, Attorney General of State of Illinois, of Chicago (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel), for appellant.

George J. Schaller, of Chicago, General Attorney, and Foran, Wiss & Burke, of Chicago, Special Attorneys (Robert E. Wiss, of counsel), for Chicago Transit Authority, appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an eminent domain proceeding in which the petitioner, Medical Center Commission, a public body, appeals from an order which dismissed its petition to condemn parcels of land owned in fee simple by defendant, Chicago Transit Authority, a municipal corporation.

On March 28, 1967, the petitioner filed the petition to condemn so as to acquire title to a strip of land within its boundaries which was owned or used under an easement by defendant CTA and constituting part of its elevated right-of-way over which it operated rapid transit trains. The allegations of the petition included:

> "(5) The property herein sought to be condemned and hereinafter described . . . is situated within the boundaries of said Medical Center District, is necessary and desirable for the lawful uses and purposes of petitioner and is also of the character and nature of property which the aforesaid statute of the State of Illinois authorizes and empowers petitioner to acquire as above set forth; . . . ."

The petition prayed that petitioner be awarded fee simple title to the strip of land "subject, however, to the rights of the Chicago Transit Authority."

The defendant CTA filed a traverse and motion to dismiss, which denied the right of the Medical Center

124

to exercise the power of eminent domain as to the property or property rights of the CTA. The traverse and motion was based "on the fundamental eminent domain principle that property owned by a public body and devoted to public use is not subject to condemnation by another public body having only a general power of eminent domain."

On May 29, 1968, the trial court sustained the traverse and motion and dismissed the petition to condemn as to those parcels wherein fee simple absolute title was vested in the CTA. The instant appeal is from that portion of the order.

On appeal the Medical Center states that "the issue is whether a public body may condemn and take property owned by another public body for a use which will not interfere with the uses being made of that land by the public body from which the said property is sought."

As to the issue on appeal, the CTA asserts that "Appellant's purported statement of the 'issue' herein is wholly inaccurate and inadequate. The true issues herein are: 1. When a Traverse and Motion to Dismiss is filed in an eminent domain case, does the condemning body have to establish, by competent evidence and proof, its right, power and authority to exercise the power of eminent domain? 2. Is it error to sustain and grant a Traverse and Motion to Dismiss, which is based on property being owned by a public body and devoted to public purpose, when in the hearing thereon, the condemning body fails to establish a specific legislative grant of power to condemn *public property*?"

Petitioner, Medical Center, maintains that "involved is a strip of land within the boundaries of the area of the Medical Center. The Chicago Transit Authority either owns the land or has an easement by which it maintains its right-of-way at least 14 feet above the land over which it operates its elevated trains. The land below the elevated tracks is not used by the Chicago Transit

Authority and what is involved in this case is whether or not this land can be put to use by the Medical Center Commission. It would seem that a mere statement of the issue should resolve it. It is not only desirable for utilitarian purposes that this land be put to use (parking in the area is in short supply and getting shorter all the time) ; it is desirable to improve the tone of the surroundings. The Chicago Transit Authority has done nothing and has no plans with regard to the land under its right-of-way to either improve it or keep it free from being the refuse dumping ground of the neighborhood."

Petitioner asserts that it "has the obligation and the duty of putting together a Medical Center and the respondent the duty to provide public transportation on and over the same land. Both functions can be carried out and should be carried out with the public good being the sole consideration. The Medical Center seeks nothing that the Chicago Transit Authority needs to carry out its function and the cases cited by both sides support the contention of the Medical Center Commission that they ought to be allowed to take from the Chicago Transit Authority that which the Transit Authority does not hold or use."

Plaintiff's authorities include Peoria P. & J. R. Co. v. Peoria & S. R. Co., 66 Ill 174 (1872), where the parties were two railroad corporations created by Act of the General Assembly. In order for plaintiff to have access to its land, it had to cross over defendant's land. The court ruled that the defendant's land was subject to condemnation, stating (p 176) :

"The land of railroad corporations not actually in use by such company, or absolutely necessary for the enjoyment of their franchise, must be upon the same footing as the land of an individual, though that may be taken even from the actual and profitable use of

126

the owner. We perceive no reason why, in this respect, railroad companies would claim and be allowed immunities not accorded to individual proprietors. The legislature has made no exception in their favor, and none in reason can be made."

Chicago West Division Ry. Co. v. Metropolitan West Side El. R. Co., 152 Ill 519, 38 NE 736 (1894), where a petition to condemn defendant railroad corporation's land was allowed, the court stating (p 521) :

"If the West Chicago Street Railroad Company had constructed its tracks on the property in question, and was using it for a right of way in the transaction of its business, we would not hesitate to hold that defendant in error could not condemn the property and appropriate it to the same use. But that was not the case. The street railroad company had never used the property as a right of way or for the purpose of running cars over it, nor, so far as appears, was it necessary for the company to use it for that purpose. Indeed, during the past three years it had been used but little as a horse barn. The question presented resolves itself into this: whether one railway company can acquire property, and hold it, not as a right of way, but for some other purpose, and thus prevent another railway company from condemning it for a different use."

City of Chicago v. Sanitary Dist. of Chicago, 272 Ill 37, 111 NE 491 (1916), where the City of Chicago was allowed to take land from the Sanitary District, the court stating (p 41) :

"[T]he land sought to be condemned is not devoted to the necessities of the district for the maintenance of its channel, and under the power of the city to construct and maintain sewers, and for that pur-

pose to exercise the right of eminent domain, we are of opinion the city had the right to condemn the land in question."

Defendant contends that "when a Traverse and Motion to Dismiss is filed in an eminent domain proceeding and the condemning body fails to establish by competent proof and evidence its right, power, or authority to exercise the power of eminent domain, the Traverse and Motion must be sustained and granted." The defendant CTA asserts that on the hearing of the traverse and motion and on the hearing to dismiss, the petitioner presented no evidence or proof relative to its asserted right to exercise the power of eminent domain generally, or relative to any purported right to condemn property or property rights owned by a public body and devoted to public use. Among the authorities cited are City of Evanston v. Piotrowicz, 20 Ill2d 512, 170 NE2d 569 (1960), and Board of Trustees of Southern Illinois University v. Lange, 28 Ill2d 229, 190 NE2d 789 (1963).

In City of Evanston v. Piotrowicz, it was stated (p 517):

> "It is the settled law of Illinois that where a defendant in a condemnation suit contests the petitioner's right to condemn by traverse, the burden is upon the petitioner to maintain its right to condemn by proper proof. . . . The burden in such instance is upon the petitioner to introduce such evidence as would, prima facie at least, prove the disputed averments."

In Board of Trustees of Southern Illinois University v. Lange, it was stated (p 230):

> "[T]he proper method of testing the sufficiency of an eminent domain proceeding is by a motion to dismiss or traverse, and when such a motion is filed

the burden is upon the petitioner to make prima facie proof of the disputed averments. . . .

"We think it clear that the motion to dismiss filed herein sufficiently traversed the jurisdictional allegations of the petition so as to require petitioner to meet this recognized burden of proof . . . .

". . .

"The entire record is before us however, and . . . it does not appear that any evidence was introduced at the preliminary hearing on the traversed allegations of the petition. . . . We have also examined the statement of the trial court's reasons for decision and find that they do not indicate that any proofs were offered by petitioner.

"Neither the unsworn statements of counsel . . . the personal knowledge of the trial judge, nor charts, plats, maps and resolutions, not introduced in evidence, can serve as a substitute for competent proof.

"It is our conclusion that respondents, by a proper legal motion, denied the right of the petitioner to exercise the power of eminent domain in this case. It, therefore, became the burden of petitioner to show its prima facie right by the production of competent evidence. . . . The record indicates that it failed to do so. The trial court was, therefore, in error in denying the motion to dismiss . . . ."

Defendant further contends that the essence of petitioner's argument herein is that "under a general power of eminent domain, property or property rights can be acquired from another public body when the use by the acquiring body will not interfere with the use by the owning body." The CTA notes that petitioner presented

no evidence in the trial court that its use would not interfere, and that defendant presented evidence of the danger and hazards of usage of the property by plaintiff. The CTA also notes that only the legislature can authorize the acquisition of the property of one subordinate agency by another subordinate agency. Authorities cited include Department of Public Works and Buildings v. Ells, 23 Ill2d 619, 179 NE2d 679 (1962), and City of Edwardsville v. County of Madison, 251 Ill 265, 96 NE 238 (1911).

In Department of Public Works and Buildings v. Ells, it was stated (p 620):

> "The proposition that a general grant of the power of eminent domain does not authorize the condemnation of property already devoted to a public use is well established. It was applied in Illinois Central Railroad Co. v. Chicago, Burlington and Northern Railroad Co., 122 Ill 473, where one railroad sought to condemn the property of another, in City of Moline v. Greene, 252 Ill 475, where the city sought to condemn the property of a public library board for street purposes, and in City of Edwardsville v. County of Madison, 251 Ill 265, where the city sought to condemn, for street purposes, a strip of land through the county poor farm. . . .

> "Where the legislature has intended to confer the power to condemn property already devoted to a public use it has done so explicitly."

In City of Edwardsville v. County of Madison, the court stated (pp 266-7):

> "The right of eminent domain is the power of the State to appropriate private property to the public use . . . . It is inherent in the State, and may be exercised by a municipality only by virtue of a grant

130

from the State. . . . The statute does not authorize the taking of the property of the State, or of the subordinate municipalities through whose agency the State government is administered, by the exercise of the right of eminent domain. Such property is already devoted to the public use and is subject to the control of the State, which may authorize such use of it as it sees fit. The legislature may authorize one use today and another use tomorrow, and . . . its discretion is absolute. . . . Our statute (chapter 47) only authorizes the courts of the State to entertain jurisdiction of proceedings for condemnation when the right to take private property for public use is involved, . . . otherwise the city might condemn the court house square for an engine house, the school district might condemn the engine house for a school house, the county might condemn the school house for a court house, and an endless chain of condemnations by various municipalities might be set in operation."

■ ■ From the foregoing we conclude that (1) "a general grant of the power of eminent domain does not authorize the condemnation of property already devoted to a public use," and "where the legislature has intended to confer the power to condemn property already devoted to a public use, it has done so explicitly," (23 Ill2d 619) ; and (2) where the legislature has conferred the power to condemn property already devoted to a public use, "the proper method of testing the sufficiency of an eminent domain proceeding is by a motion to dismiss or traverse, and when such a motion is filed the burden is upon the petitioner to make prima facie proof of the disputed averments." 28 Ill2d 229, 230.

■ The record here shows that no evidence of any statutory authority to condemn the CTA property here

131

in question was presented to the trial court; also, petitioner presented no evidence that its intended use would not interfere with the right-of-way of defendant, whereas the CTA presented a resolution passed by it on February 1, 1968, asserting that uses of areas under, over or adjoining its elevated structure can be extremely hazardous to its property and its operation.

For the reasons given, the order of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.