*In re* PETITION OF CITY OF EAST PEORIA.—(THE CITY OF EAST PEORIA, Petitioner-Appellant, *v.* GROUP 5 DEVELOPMENT COMPANY *et al.*, Defendants-Appellees.)

Third District    No. 80-121

Opinion filed November 26, 1980.—Rehearing denied January 6, 1981.

Michael O. Gard and Frederick A. Johnson, both of Swain, Johnson & Gard, of Peoria, for appellant.

Samuel G. Harrod, of Harrod & Harrod, of Eureka, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The petitioner, City of East Peoria, attempted to make a local improvement for road purposes which was to be paid for by special assessment. The proposed improvement involved the taking of land from, *inter alia*, the defendant Community College District No. 514, a body corporate and politic of the State of Illinois. Petitioner's petition for making the improvement was dismissed, and its motion to vacate the dismissal order was denied. It is from these orders that this appeal is taken.

■■ The single issue presented in this appeal is whether the Illinois Municipal Code of 1961 (Ill. Rev. Stat. 1977, ch. 24, par. 2—2—1 *et seq.*), and particularly sections 9—2—14 and 9—2—15 of the Code gives the petitioner the authority to take public property for the purpose of a local improvement.

In addressing ourselves to this sole and narrow issue we note that the grant of power by the legislature to specified municipalities to make local improvements and to pay for the same by special assessments dates back to the year 1897.

The power of a municipality to take public property for a local improvement was presented in the early case of *City of Moline v. Greene* (1911), 252 Ill. 475, 96 N.E. 911. In this case the city desired to take 10 feet off property owned by the Moline Public Library for the widening of a public street. Our supreme court stated the general rule applicable to the taking of property already devoted to public use to be as follows:

> "The general rule is, that such property cannot be taken and appropriated to another and different use unless the legislative intent to so take it has been manifested in express terms or by necessary implication." 252 Ill. 475, 477, 96 N.E. 911, 912.

Our supreme court then held that the provisions of the local improvement act as then written did not specifically authorize the taking of property devoted to public use, nor did they find in esse any necessary implication which would permit such taking. It should be noted that the local improvement act at the time of the decisions in *City of Moline* specifically authorized the taking of only private property. Subsequent decisions of our supreme court adhered to the ruling in *City of Moline*, to-wit, that the local improvement act gave a municipality the authority to take private property for the purpose of local improvements. See *City of Rockford v. Mower* (1913), 259 Ill. 604, 102 N.E. 1032; *City of Chicago v. Thomasson* (1913), 259 Ill. 322, 102 N.E. 748; and *City of Chicago v. Roth* (1929), 334 Ill. 132, 165 N.E. 627.

We have set forth this brief history of the local improvement act for a twofold purpose. First, to illustrate that the act from a very early date has granted authority for the condemnation of property but, secondly, such

grant of authority was interpreted so as to be restricted to the taking of only private property. This was the interpretation of the act prior to the enactment of amendatory legislation in the year 1933. On May 24, 1933, Senate Bill 544, which had passed both the senate and house of representatives during the 58th General Assembly, was approved by the governor and became law. The effect of this legislation was to amend various sections of the local improvement act so as to insert the words "or public property." After the 1933 amendments sections 12 and 13 of the act would read as follows:

"§12. Should such an ordinance provide for improvements which require the taking or damaging of property, the proceeding for making just compensation therefore (therefor) shall be as described in sections 13 to 33, inclusive, in this act. Such proceeding shall also be governed by the remaining sections of this act, so far as not in conflict with the said sections 13 to 33, inclusive.

§13. Whenever any such ordinance shall be passed by the legislative authority of any such city, village or town, for the making of any local improvements that such city, village or town is authorized to make, to be paid for wholly or in part by special assessment, or by special taxation, the making of which will require that private or public property be taken or damaged for public use, such city or village shall, either in such ordinance or by subsequent order, designate some officer to file a petition in some court of record of the county in which such city, village or town is situated, or if such city, village or town is situated in more than one county and the proposed improvement or the property to be taken or damaged, or both, lies in more than one county, then in some court of record in the county in which the major part of the territory to be effected (affected) thereby is situated, in the name of the municipality, praying that steps may be taken to ascertain the just compensation to be made for private or public property to be taken or damaged for the improvement or purpose specified in such ordinance, and to ascertain what property will be benefited by such improvement, and the amount of such benefits." Ill. Rev. Stat. 1935, ch. 24, pars. 134, 135.

In 1961 the provisions which we have set forth above, as well as other portions of the local improvement act, were codified as section 9—2—1 *et seq.* of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 9—2—1 *et seq.*) Sections 12 and 13 as amended by the 1933 legislation, while not identical in every respect with sections 9—2—14 and 9—2—15 of the present local improvement act, are for the purposes of this appeal and the determination of the issue presented, the same. The words "or public property" have at all times since 1933 been retained and carried

forward so that the act presently refers to the taking of private or public property and the ascertainment of just compensation for the taking or damaging of private or public property.

Narrowing further an issue already referred to as a narrow one, we can and do state that the precise question presented in this appeal is what is the effect and meaning of the insertion of the words "or public property" in the "taking" and "compensatory" paragraph of the local improvement act (Ill. Rev. Stat. 1977, ch. 24, pars. 9—2—14 and 9—2—15).

Our reviewing courts have held that a statute must be construed so as to ascertain and give effect to the intention of the General Assembly. (*Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. 2d 489, 140 N.E.2d 687; *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) The 1933 amendments of the local improvement act which resulted in the insertion of the words "or public" in referring to property which could be taken cannot be considered meaningless. For many years prior to 1933 the power to take property pursuant to the authority granted in the local improvement act was specifically limited to private property. The legislature, by inserting the words "or public" in referring to the kind of property subject to eminent domain, can only mean that the legislature's intention was to expand the grant of authority to take private property to the taking of both private and public property. During oral argument of this appeal counsel for defendant-appellee school was asked what in his opinion the words "or public property" meant. He replied to the effect that he had no idea as to what meaning should be given to the phrase. We cannot and will not conclude that our legislature in amending the local improvement act in 1933 was possessed of no intention and was indulging itself in an exercise in futility. The obvious intent was to permit the taking of public property by eminent domain, and public property is defined as property maintained at the public expense and under public control. The Random House Dictionary (unabr. ed. 1966).

The defendant school cites several cases in support of its position that the local improvement act (Ill. Rev. Stat. 1977, ch. 24, par. 9—2—1 *et seq.*) does not permit the taking of its property since the same is public property. Among those cited are *Department of Public Works & Buildings v. Ells* (1962), 23 Ill. 2d 619, 179 N.E.2d 679, and *Medical Center Com. v. Powell* (1970), 124 Ill. App. 2d 123, 260 N.E.2d 261. We fail to see the applicability of these cases, since neither involves the local improvement act, and the eminent domain provision encountered in each case is a general grant of power rather than a specific grant of power referring to public property such as we encounter in the instant case. The defendant-appellee also relies on *Metropolitan Sanitary District v. City of Des Plaines* (1976), 36 Ill. App. 3d 726, 344 N.E.2d 729. Such reliance is in our

opinion misplaced, since an examination of the case discloses that the reviewing court held that the statute in question would permit the taking of public property. Lastly cited is the case of *City of Edwardsville v. Madison County* (1911), 251 Ill. 265, 96 N.E. 238. In this case the City of Edwardsville attempted to take a strip of land for street purposes from the Madison County poor farm. The local improvement act was not involved, and the reviewing court held that the statute in question did not authorize the taking of public property. Our supreme court, however, made the following clairvoyant observation:

> "The power has been granted to cities for the purpose of laying out streets. Such power extends, however, only to the taking of private property. The statute does not authorize the taking of the property of the State, or of the subordinate municipalities through whose agency the State government is administered, by the exercise of the right of eminent domain. Such property is already devoted to the public use and is subject to the control of the State, which may authorize such use of it as it sees fit. The legislature may authorize one use to-day and another use to-morrow, and except where private rights are affected, its discretion is absolute." 251 Ill. 265, 266-67.

In 1911 our supreme court recognized that the legislature could authorize the taking of public property. In the instant case the legislature did in 1933 grant such authority to the local improvement act.

The defendant-appellee argues that it was not the intent of the legislature to authorize the taking of public property via the terms of the local improvement act as amended in 1933, yet we deem it noteworthy that no alternative construction has been suggested or proposed by the defendant-appellee school. We can only conclude that the intent of our legislature in 1933 was to expand the local improvement act's power so as to include the taking of public property as well as private property.

■■ Counsel in this appeal have acknowledged that a number of public bodies have the authority to take by eminent domain public property and, as in this case, a public body can take property from another public body. Concern was expressed that as the result of such grants of power there might well be unending fratricide among public bodies, *i.e.*, that by eminent domain they would prey upon each other. We harbor no such fear, for it is evident that such a situation has not occurred, nor will it occur in the future. It will not occur because the grantee of the power of eminent domain cannot abuse its discretion in exercising its power and there must be a necessity for the taking of the property. (See 17 Ill. L. & Prac. *Eminent Domain* §20 (1956).) With the court being the arbiter we have assurance that there will not be an abuse by public bodies in their exercise of the power of eminent domain.

For the reasons set forth the order of the Circuit Court of Tazewell County dismissing petitioner's petition is reversed and this case is remanded for further proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.