MCI WORLDCOM COMMUNICATIONS, INC., Plaintiff-Appellant, v. METRA COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY et al., Defendants-Appellees.

Second District    No. 2—01—1438

Opinion filed March 10, 2003.

Thomas F. Geselbracht and Karen S. Way, both of Piper Rudnick, of Chicago, for appellant.

Donald T. Morrison and Margaret M. Borcia, both of Morrison & Morrison, P.C., of Waukegan, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, MCI WorldCom Communications, Inc. (WorldCom), appeals the judgment of the circuit court of Lake County in favor of defendants, METRA Commuter Rail Division of the Regional Transportation Authority (METRA) and CMC Heartland Partners (CMC), denying its petition seeking to condemn METRA-owned property. WorldCom challenges the court's findings and its interpretation of the Telephone Company Act (Act) (220 ILCS 65/4 (West 2000)).

On December 22, 2000, WorldCom filed its complaint seeking to acquire a permanent easement for the construction, operation, and

maintenance of an underground fiber optics telecommunications line under a railroad crossing (crossing parcel) intersecting with Osterman Avenue in Deerfield. On January 31, 2001, defendants filed a traverse and moved to dismiss the complaint. After an evidentiary hearing, the court granted the traverse and dismissed the complaint.

The following facts were established at the hearing. The crossing parcel was originally owned by the Chicago Milwaukee & St. Paul Railway Company (Milwaukee Road). After Milwaukee Road went bankrupt and its residual assets were transferred to CMC Real Estate Corporation, the Regional Transportation Authority (RTA) condemned a portion of Milwaukee Road's assets, including the crossing parcel. CMC Real Estate and the RTA entered into two agreements regarding the crossing parcel. In the stipulation agreement, the RTA acquired the crossing parcel and simultaneously deeded the property to METRA. The second agreement, titled the "Fiber Optics Agreement," granted CMC Real Estate the right to receive two-thirds of the income received by METRA for fiber optic easements. The "Fiber Optics Agreement" further provided that CMC Real Estate would act as METRA's agent in negotiating the fiber optics easement. In 1989, CMC Real Estate transferred its interest in the "Fiber Optics Agreement" to the Chicago Milwaukee Corporation, and Chicago Milwaukee Corporation, in turn, transferred its interest to CMC.

The acquisition of the easement under the crossing parcel was part of a project to connect the WorldCom network with an Ameritech facility in Deerfield. WorldCom claims that the easement is necessary to complete the project. The dispute arose when Donald Wheeler, WorldCom's senior real estate and permit manager, informed Jim Konstantelous of CMC that WorldCom intended to acquire the easement under the crossing parcel. After WorldCom made a final offer of $20,000 and CMC demanded no less than $100,000, the negotiations broke off. Subsequently, WorldCom brought suit to condemn the crossing parcel.

After the hearing, the court determined that METRA owns the crossing parcel in fee simple and that METRA's status as a governmental entity prohibits WorldCom from exercising its power of eminent domain. WorldCom now appeals, asserting that (1) the Act grants WorldCom the power to condemn METRA property, (2) the court erred by finding that METRA owns the property in fee simple, and (3) METRA's actions amount to a violation of the Federal Telecommunications Act of 1996 (FTA) (47 U.S.C. § 253 (2000)). For the following reasons, we affirm the judgment of the court.

■ As a preliminary matter, when a traverse is filed, the plaintiff has the burden to make a *prima facie* case demonstrating its authority

to condemn property. *Lake County Forest Preserve District v. First National Bank of Waukegan*, 154 Ill. App. 3d 45, 51 (1987). Defendants' traverse was properly granted and WorldCom's action appropriately dismissed if WorldCom failed to establish its right to condemn. *Lake County Forest Preserve District*, 154 Ill. App. 3d at 49. Our standard of review for a ruling on a traverse is whether the court's order is against the manifest weight of the evidence. *City of Naperville v. Old Second National Bank of Aurora*, 327 Ill. App. 3d 734, 739 (2002). The court's order is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Naperville*, 327 Ill. App. 3d at 739.

First, WorldCom challenges the court's interpretation of section 4 of the Act as restricting its right of condemnation to private entities. METRA, as a division of the RTA, is "a unit of local government, body politic, political subdivision and municipal corporation." 70 ILCS 3615/1.04 (West 2000); see also *Smith v. Northeast Illinois Regional Commuter R.R. Corp.*, 210 Ill. App. 3d 223, 228 (1991). WorldCom argues that section 4 grants it the right to condemn railroad property without regard to the railroad company's status as a public entity. We hold otherwise.

■ A corporation or department of the government can exercise the power of eminent domain only when it has been specifically conferred by legislative enactment, and the law conferring the authority must be strictly construed to protect property owners. *Forest Preserve District v. Estes*, 222 Ill. App. 3d 167, 175 (1991). " '[A] general grant of the power of eminent domain does not authorize the condemnation of property already devoted to a public use,' and 'where the legislature had intended to confer the power to condemn property already devoted to a public use, it has done so explicitly.' " *Medical Center Comm'n v. Powell*, 124 Ill. App. 2d 123, 131 (1970), quoting *Department of Public Works & Buildings v. Ells*, 23 Ill. 2d 619, 620-21 (1962). Such a legislative grant of eminent domain power can be exercised only in the manner authorized by statute. *Village of Cary v. Trout Valley Ass'n*, 282 Ill. App. 3d 165, 169 (1996).

■ Our review of section 4 is *de novo*. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 183 (1999). We first attempt to give effect to the legislative intent by looking at the plain language of the statute. *Davis*, 186 Ill. 2d at 185. If the plain language is clear, the court need not delve into the rules of statutory construction. *Davis*, 186 Ill. 2d at 185. Moreover, " '[w]here the language of a statute is clear and unambiguous, a court must give it effect as written, without "reading into it exceptions, limitations or conditions that the legislature did not express." ' [Citation.]" *Davis*, 186 Ill. 2d at 184-85.

"It is not within the province of an administrative agency or court to take from or enlarge the meaning of a statute by reading into it language which will, in the opinion of either, correct any supposed omissions or defects." *American Steel Foundries v. Gordon*, 404 Ill. 174, 180-81 (1949).

■ Section 4 grants every telecommunications carrier the right to condemn private property. 220 ILCS 65/4 (West 2000). Section 4 states, in pertinent part:

"Every telecommunications carrier as defined in the Telecommunications Municipal Infrastructure Maintenance Fee Act may, when it shall be necessary for the construction, maintenance, alteration or extension of its telecommunications system, or any part thereof, enter upon, take or damage *private property* in the manner provided for in, and the compensation therefor shall be ascertained and made in conformity to the provisions of the Telegraph Act ***." (Emphasis added.) 220 ILCS 65/4 (West 2000).

Section 4 further adds that "[n]o telecommunications carrier shall exercise the power to condemn *private property* until it has first substantially complied with such rules with respect to the property sought to be condemned." (Emphasis added.) 220 ILCS 65/4 (West 2000). The language of section 4 clearly limits telecommunications carriers' power to exercise eminent domain to private property.

The controversy here arises from the following additional language contained within section 4: "the telecommunications carrier shall not have the right to condemn any portion of the right-of-way of any railroad company except as much thereof as is necessary to cross the same." 220 ILCS 65/4 (West 2000). WorldCom argues that this language grants it the power to condemn the property of any railroad without regard to its status as a public or private entity.

■ WorldCom mistakenly assumes that this phrase replaces the previously cited passages as the operative language granting the power of eminent domain when the property owner is a railroad. However, the passage WorldCom relies upon is not an expression of a grant of power. Rather, the passage acts as a limit upon the power of telecommunications carriers to exercise eminent domain over the private property of railroad companies. Section 4 begins by listing the powers granted to telecommunications carriers, including the power to condemn private property. Section 4 then defines and limits those powers. The passage cited by WorldCom includes the limiting language, "shall not have the right to condemn," and resides with the other limiting conditions in the statute. It would have been a simple matter for the legislature to include explicit language at the beginning of section 4 granting carriers the power to condemn any type of

railroad property. Section 4 contains no such language. We will not subvert the clear intention of the legislature to limit the power of eminent domain to private property by expanding and twisting the statute's language to create a result clearly contrary to section 4's purpose. Accordingly, we find that section 4 does not allow a telecommunications carrier to condemn the property of a railroad company that is a public entity.

■ Next, WorldCom contends that METRA holds only an easement granting it a right-of-way to operate trains over the crossing parcel. It asserts that the RTA acquired only a right-of-way as a result of the 1987 condemnation of CMC Real Estate's property, leaving CMC Real Estate with a residual interest in the crossing parcel. Hence, WorldCom maintains that CMC Real Estate, a private entity, is the owner of the subsurface of the crossing parcel and that interest is subject to condemnation under section 4 of the Act. Contrary to World-Com's position, the court held:

> "As to the issue of ownership, the Court has had an opportunity to review not only [the RTA's] condemnation complaint, but also the final judgment order and the other evidence submitted. It's the Court's opinion that the RTA in the proceeding did acquire fee simple title to the property."

We agree with the decision of the court on this matter.

There are three principal documents that the parties rely upon to determine the interest METRA acquired and CMC Real Estate retained in the RTA's condemnation proceeding, namely, the RTA's complaint, the stipulation agreement, and the final judgment order. WorldCom supports its position mainly by citing a description in the complaint of the property being sought by the RTA. WorldCom quotes a passage stating in part that the real property being acquired includes "that certain right of way occupied, whether by lease, easement, fee, or any other interest." If this was the only statement relating to the description of the interest obtained by the RTA, we might conclude that WorldCom's position is correct. However, after examining the complaint, the stipulation agreement, and the final judgment order, we find that METRA clearly owns the crossing parcel in fee simple.

Irrespective of the reference in the complaint to "that certain right of way," we believe that the breadth of the interest the RTA sought to acquire was the whole of Milwaukee Road's interest in fee simple. The final judgment order in the matter between the RTA and CMC Real Estate states:

> "[A]side from the exceptions and reservations provided in the Stipulation, all right, title and interest of CMC [Real Estate], Chicago Milwaukee Corporation, and all Unknown Owners in the

Acquired Property is hereby vested in the RTA as set forth in the Stipulation."

The stipulation agreement states that the RTA acquired and simultaneously transferred to METRA all of the right, title, and interest of CMC Real Estate in the property. The stipulation agreement goes on to specifically list the property that has not been acquired by the RTA. Thus, CMC Real Estate retained miscellaneous personal property, air rights, and the right to receive a portion of the fiber optics revenues. Accordingly, we conclude that the RTA received an interest in fee simple subject only to these few exceptions.

■ We also note that, contrary to WorldCom's claim of collusion between METRA and CMC, the "Fiber Optics Agreement" granting CMC a share of the revenue from the sale of the right to lay fiber optic cable appears to be nothing more than an ordinary revenue sharing agreement. CMC does not have the right to grant a telecommunications carrier permission to lay fiber optic cable. METRA alone possesses this right. WorldCom has presented no evidence to support its claim that this arrangement is a form of collusion to prevent it from laying fiber optic cable under the crossing parcel.

■ Last, WorldCom maintains that the court erred by failing to find that METRA's actions violated the FTA. The FTA provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a) (2000). WorldCom relies on *Bell Atlantic-Maryland, Inc. v. Prince George's County, Maryland,* 49 F. Supp. 2d 805 (1999), to support its argument that METRA violated the FTA by allegedly refusing to charge a fair and reasonable fee for access to its property. We believe that WorldCom's argument is flawed because it addresses the wrong issue.

The court's order granting the traverse states:

"As to the issue of the Federal Telecommunications Act of 1996, the plaintiff failed to establish that the defendants engaged in any anti-competitive activities and thus, the provisions of the Federal Telecommunications Acts of 1996 do not bar the defendants from contesting the plaintiff's right to acquire the subject property by eminent domain."

The court found that WorldCom did not satisfy its burden to establish the value of the interest in the crossing parcel it hoped to acquire. Resultantly, the court had no frame of reference from which to judge if the price asked for by CMC was unreasonable. Thus, the FTA provisions prohibiting government bodies from exacting an unreasonable fee from a telecommunications carrier were never implicated.

584

WorldCom's brief argues only that the FTA prohibits METRA from exacting an unreasonable fee from the telecommunications carrier. Under Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), points not argued in an appellant's brief are waived and will not be considered on appeal. *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507 (1997). WorldCom has failed to address the court's finding that it did not meet its burden to introduce competent evidence of value as to the property it seeks to take. See *Lake County Forest Preserve District v. Kerrigan*, 58 Ill. App. 3d 249, 252 (1978). We find that WorldCom has waived its contention that METRA has violated the FTA by failing to address this fundamental issue in its brief.

For the aforementioned reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

HUTCHINSON, P.J., and KAPALA, J., concur.